HORRELL ET AL. v. GULF & VALLEY COTTON OIL CO., INC.

—

(December 15, 1930. Opinion and Decree.)
(January 19, 1931. Rehearing Refused.)
(March 3, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

—

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, attorneys for plaintiffs, appellees.

Rosen, Kammer, Wolff & Farrar, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. This litigation results from the death of Walter J. Horrell, a young man twenty-four years of age, who died because of severe burns which he sustained while engaged in doing certain repair and reconstruction work in the manufacturing plant of defendant.

The plaintiffs, as the suit was originally filed were: (1) William Francis Horrell, Sr., father of the decedent; (2) Mrs. Jennie Furey Horrell, mother; (3) Edward Allen Horrell, minor brother; (4) Miriam Horrell, minor sister; (5) William Francis Horrell, Jr., brother, of full age. The petition charged that the decedent, at the time of the accident, was employed by his father, William Francis Horrell, Sr., one of the petitioners, and that he was engaged in assisting in "the setting up of brick work and construction of one of the furnaces"; that this work was being done under contract between his father, the said Horrell, Sr., as contractor, and the defendant as principal; that, while decedent was engaged in said work, a deodorizing tank, nearby, exploded; that in the said tank which exploded there was superheated steam and a solution of caustic soda, both of which, as a result of the explosion,

were showered upon decedent and others, and that he received such severe steam and acid burns that he died some twenty hours later, after suffering terrible agony; that the explosion of the tank was the result of the negligence of defendant, or of its employees, or agents, or officers, and that defendant is therefore liable to petitioners. Decedent's automobile, standing nearby, was damaged, and this item is also sued for by the survivors.

Defendant's answer is in effect a general denial, though certain allegations are admitted to be true.

When the case came on for trial and the first witness was called by counsel for plaintiff, counsel for defendant objected to the introduction of any evidence on the ground that the petition failed to disclose a cause of action. That objection, we are told, was based on six distinct grounds, as follows:

(1) That the petition did not negative the existence of a wife and child, or children, of decedent, and that neither a mother, nor a father, nor a brother, nor a sister, has any right of action until it is alleged and shown that there is in existence neither wife nor a child of decedent.

(2) That the brothers and sister of the decedent, even in the absence of a wife or child, have no right of action where there is a mother or a father living.

(3) That even the father has no right of action for the expenses of last illness, burial of the deceased, and for damages to deceased's automobile, because, deceased being a major, these expenses may be claimed only by his personal representative; that is to say, his administrator, or his executor, or by his heirs, after judgment of possession.

(4) That the father has no right or cause of action for the cost of a burial plot, this not being an element of damage within the contemplation of article 2315 of the Civil Code.

(5) That the mother has no right of action for medical services and expenses made necessary by her nervous shock, as these are community debts for which the husband alone can recover.

(6) That, no matter who may be entitled to recover for the death of decedent, the recovery should be in compensation under Act 20 of 1914, as amended, and not in tort under article 2315 of the Civil Code.

1. On this ground the exception was properly maintained because article 2315 of the Civil Code, under which this suit is brought, as amended by Act No. 120 of 1908, gives to the parents a right of action for the death of a child only in the absence of a surviving widow or children. Thus a petition which does not negative the existence of a widow and children fails to show a right of action in any of the more distant relatives. Blackburn v. La. Ry. & Navigation Co., 128 La. 319, 54 So. 865; Underwood v. Gulf Refining Co., 128 La. 968, 55 So. 641; Register et ux. v. Harrell, 131 La. 983, 60 So. 638; Marshall v. La. State Rice Milling Co., 144 La. 828, 81 So. 331; Stearns v. Love Drilling Co., Inc., 5 La. App. 174.

However, it is equally clear that the district judge exercised proper discretion in granting to plaintiffs the right to amend, in order that they might make the allegation that there was in existence neither wife nor child of decedent. It is within the discretion of the trial court to permit amendments where the petition is defective because of insufficient allegation only.

Where the petition manifestly alleges every fact that can be alleged, and yet a cause of action is not disclosed, no amendment should be permitted, because no amendment can cure such defect. Here, however, the deficiency results, not from the plaintiffs' inability to make the proper allegation with regard to the absence of a wife and of a child, but merely from oversight in omitting such allegation from the original petition. In Blackburn v. La. Ry. & Navigation Co., supra, an amendment was permitted. In Register et ux. v. Harrell, supra, the Supreme Court held that to permit such an amendment was within the discretion of the court. In Stearns v. Love Drilling Co., Inc., supra, this court remanded to the district court a suit in order that such an amendment might be made in that court. In Cazeaux v. N. O. Public Service, Inc., 14 La. App. 320, 124 So. 685, 687, we said:

"* * * The whole trend of modern procedure is to do away with technicalities and to permit amendments where no cause of action is based upon the insufficiency of the allegations of the petition."

2. That the brothers and sisters have no right of action for the death of a brother, where the petition shows that there are a father and a mother still living, is evident from a mere reading of the codal provision to the effect that it is only in default of a wife or child, or father or mother, that the brothers and sisters have a right of action. Since the petition affirmatively alleged the existence of persons in a class preceding in right to brothers and sister, no amendment could be effective in eliminating that obstacle to the claim of the collaterals, and the petition was properly dismissed so far as they were concerned.

3. and 4. It appears to us that the objection was well founded on grounds 3 and 4, and that these items should have been eliminated, but we are unable to say whether they were taken into consideration by the jury in fixing the amounts awarded.

5. On ground 5 the objection was well founded, and no recovery should be allowed the mother for her medical expenses, et cetera, as these are recoverable only by the husband as head and master of the community. In Shield v. F. Johnson & Son Co., Ltd., et al., 132 La. 773, 61 So. 787, 788, 47 L. R. A. (N. S.) 1080, the Supreme Court said:

"Both defendants excepted, on the ground of no cause of action. This exception is aimed, in part, at those items of damages set forth in the petition for doctor bills, nurse bills, drug bills, clothing, and hospital ambulance service connected with the injury alleged by plaintiff.

"These are expenses of the community for which the husband is responsible; and he alone can recover therefor."

6. Ground 6 of the exception presents the principal defense upon which defendant relies, and in support of it is made the following contention: That, according to the petition, defendant is engaged in one of the hazardous enterprises within the contemplation of paragraph 2 of section 1 of Act No. 20 of 1914 (Workmen's Compensation Act of Louisiana); that under paragraph 1 of section 6 of that act no principal, within the contemplation of the act, may contract with any one else to do any part of the general work which comes within the category of the trade, business, or occupation of the principal, or any part of the work undertaken by the principal by contract, without becoming liable to the employees of the independent or subcontractor for such compensation as may be-

come due to such employees or their dependents; that the remedy provided by the Workmen's Compensation Act is exclusive, that is to say, that a master who is liable in compensation cannot be also liable to the same employee in tort for the same injuries; that the work decedent was engaged in doing was a part of the trade, business, or occupation of defendant, and that, thus, under paragraph 1 of section 6 of the statute, defendant, if liable at all, is liable in compensation and not in tort. It may be well at this time to set forth in full paragraph 1 of section 6 of the act:

"* * * Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he has contracted to perform, and contracts with any other person (in this section referred to as contractor) for the execution by or under· the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then, in the application of this act, reference to. the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed."

In considering the question raised by this contention, we at once notice that it is not all work which the principal may require that the act prevents his contracting away without retention of compensation liability, but only such as is a part of his trade, business, or occupation, or which he may have contracted to perform for some one else.

It is, we believe, quite plain that a manufacturing concern, upon organization, may contract with an independent contractor for the erection of its factory building without retaining liability under the Compensation Act to employees of the independent contractor who undertakes the construction. It is no part of the trade, business, or occupation of the manufacturing concern to erect its factory building. Its business is to operate it after its erection.

On the other hand, it is clear that, after the factory is completed and is in operation, the principal may not employ an independent contractor to undertake any part of the business of operating the factory and thus escape liability in compensation to the employees actually engaged in carrying out the work undertaken by the independent contractor. For instance, if defendant here had employed Horrell to furnish the necessary labor to operate the boilers, it is quite evident that Horrell's employees would, under the provisions of section 6 of the act, be entitled to look to defendant for compensation in the event of injury. We thus see that, if the original construction work is not a part of the business of the principal, that work may be contracted away, whereas the operation of the factory after construction is completed, being a part of the business of the principal, may not be so contracted away without the retention of compensation liability.

If the principal may contract with the independent contractor for original construction, we see no reason why he may not contract for additional necessary construction, or reconstruction later on. If the work contracted for is within the category of operation, then, of course, it may not be contracted for except under the conditions imposed by section 6.

Into what class shall we place the work in which decedent here was engaged and which his father had contracted to do? We notice in the petition the work is referred to as "setting of brickwork and construction of one of the furnaces," and we notice that the allegations of this article 5 are, in the answer, admitted to be true.

The record shows that the particular kind of brickwork which was being done required specialists, and that the regular employees of defendant did not engage in that kind of special work.

But defendant contends that even reconstruction or alteration work, since it is necessary in the continued operation of the manufacturing plant, is within the contemplation of the act, and cites many cases, some of which, unless carefully analyzed, seem to support this view. For instance, in Fox v. Fafnir Bearing Co. et al., 107 Conn. 189, 139 A. 778, 779, 58 A. L. R. 861, the injured workman was an employee of one McGrath, who, as a contractor, had undertaken to clean all the windows in the factory of defendant, which was engaged in the manufacture of bearings. The Connecticut statute provided that a principal employer should be liable in compensation to the employees of an independent contractor if the work which the independent contractor had undertaken was "a part or process in the trade or business of the principal employer." The court held the principal employer liable to the injured employee of the independent contractor, but the reasons given show that that case is distinguishable from the case at bar, and rather supports plaintiffs' contention than that of defendant. There the court said that the cleaning of windows is nothing more than ordinary janitor work, and is usually performed by the regular employees of the general employer, and "is

clearly distinguishable from work done in connection with the repair or alteration of the factory buildings."

In Burt v. Munising Woodenware Co. et al., 222 Mich. 699, 193 N. W. 895, the general employer entered into a contract with an independent contractor under which the latter undertook to repair a boiler in the manufacturing plant of the general employer. It was held that the employee might seek compensation directly from the general employer. While this case appears to squarely support the contention of defendant, it is possible that on two grounds it may be distinguished from the case at bar. In the first place, the work being done was manifestly nothing but repair work on a piece of equipment already installed, and there is nothing to show that that repair work may not have been done by the employees of the general employer himself, and, furthermore, the Michigan statute, though somewhat similar to that which we are now considering, was plainly much broader in its terms, and was not limited in this regard to such work as is part of the trade, business, or occupation of the principal.

In Caca v. Woodruff, 70 Ind. App. 93, 123 N. E. 120, another case relied on by defendant, we find facts in many respects indistinguishable from the ones presented here. A carpenter was engaged to add an additional room to a mill building. He was injured, and claimed compensation from the mill owner. But the question presented there was not in any way similar to that which confronts us. There the injured party was employed directly by the mill owner, there was no intermediate employer, and the defense made was that the employment was merely casual, and that therefore the employee could not recover in compensation, since the Indiana statute

did not afford relief, unless the employment was both casual and not in the usual course of the trade, business, occupation, or profession of the employer. The court found that the employee had, on several occasions in the past, been employed to do similar work, and that thus his employment was not casual. Since he was not a casual employee, he was entitled to compensation.

In Clementine v. Ritchie, 1 La. App. 296, it was conceded that Ritchie was regularly in the business of building houses. Clementine was an employee of one Willis, an independent contractor who had undertaken to perform, through his employees, all the carpenter work on a house Ritchie was constructing. The court held that carpenter work was a component part of the general work of Ritchie, the building of houses, and that thus Ritchie was responsible under section 6 of the act to any one engaged in the carrying out of that part of his business. If defendant were in the business of erecting oil refineries for sale, the Ritchie case would be apposite.

In Seabury v. Arkansas Natural Gas Corporation, 171 La. 199, 130 So. 1, the defendant was in the business of erecting and operating oil wells. It employed an independent contractor to move certain equipment to be used in the erection and boring of a well. The independent contractor employed Seabury to haul certain pipe. Seabury was injured, and, under section 6 of the act, sought compensation directly from the oil company. The court held that it was part of the business of the oil company to drill wells, as well as to operate them, and that, since Seabury was hauling equipment to be used in drilling, he was engaged in the trade, business, or occupation of defendant. If we could hold that the erection or reconstruction of an oil refining mill was a part of the business undertaken

by defendant here, the Seabury case would be applicable, but its business was not to erect mills, but solely to operate them. But no good purpose can be served by an analysis and discussion of every decision cited. It will probably be very often difficult to decide whether the work in any given case falls within or without the section. It is, as was said in Mantor v. Cantwell [1920] A. C. 781, cited in Fox v. Fafnir Bearing Co. et al., supra "neither convenient nor proper to travel beyond the facts of a particular case to lay down general rules to govern cases which may or may not arise hereafter."

Defendant has cited several cases in which direct employees have been held to be under the general protection of the act, although the work they were at the time engaged in was admittedly even less closely related to the trade or business of the master than was the work which decedent here was engaged in doing.

Under the general provisions of the statute, as distinguished from the special provisions of section 6, an employee may recover if injured by an accident arising out of and in the course of his employment, and this language has been interpreted very liberally, and it has been many times said that work need only be incidental to the general business of the master in order to bring the employee performing it within the coverage of the act.

Section 6 is not so broad, and it is easily conceivable that, between the broad limits of the general provisions of the statute and the more restricted limits of section 6, there is a zone in which must be placed an employee who is engaged at work incidental to his employer's business, and who thus comes within the general provisions, but who, if performing the same

work for an independent intermediate contractor, might be said to be not engaged in the carrying out of a part of the trade, business, or occupation of the principal.

A study of section 6 of the act and recognition of the purpose intended to be served thereby, and an analysis of the many cases to which we have been referred, leads us to the conclusion that a general employer or principal may, without retaining liability to the employees of an independent contractor, employ such independent contractor to do such special work as is not generally done directly by others engaged in the same line of business as is the principal, such as special construction, or even such unusual repairs as are ordinarily made by specialists not customarily within the direct employ of the principal. The record convinces us that the work which Horrell had undertaken was such special work, and no part of the trade, business, or occupation of the principal, and that thus section 6 of the act has no application, since the sole purpose of that section was to protect employees of minor contractors against the irresponsibility of their immediate employers by making the principal employer, who has general control of the business in hand, liable, as if he had directly employed all who work upon any part of the business which he has undertaken to carry on. The work being done by decedent here was not a part of the business which the principal had undertaken to carry on, but was, in fact, a part of the work some one else had undertaken to do for him.

If there is any right of action in plaintiffs, it arises under article 2315 of the Civil Code, and not under the Workmen's Compensation Act.

In considering the question of whether there is liability in tort, we find it neces-

sary to first determine whether the doctrine of "res ipsa loquitur" is applicable, because, after a careful review of the entire record, we cannot but reach the conclusion that the true cause of the accident has not been shown by a preponderance of the evidence, and that plaintiffs have failed in their attempt to show any of the specific acts of negligence charged; in other words, plaintiffs have not sustained the burden of proof. But was there such a burden placed upon plaintiffs here?

A leading Louisiana case involving the application of the doctrine of "res ipsa loquitur" is Lykiardopoulo v. N. O. & C. R. Light & Power Co., 127 La. 309, 53 So. 575, Ann. Cas. 1912A, 976. In that case the court said:

"Where a plaintiff cannot be expected to have any information as to the causes of an accident, whereas defendant must be assumed to be fully informed, and where the accident is of the kind which ordinarily does not occur when due care has been exercised, plaintiff need not allege nor prove the particular acts of omission or commission from which the accident resulted; but the accident itself makes out a prima facie case, casting on defendant the burden to show absence of negligence, and this rule is of peculiar applicability in cases of boiler explosions."

The facts of the case at bar bring it squarely within the doctrine just above quoted, and the inevitable result is that the doctrine contended for by plaintiffs is applicable and relieves them from the duty of bearing the burden of proof.

In fact, defendant does not dispute that this doctrine would ordinarily be applicable to the acts here, but contends that, where a plaintiff, who may take advantage of the doctrine of "res ipsa loquitur," and who need neither allege nor prove any specific act of negligence, nevertheless un-

dertakes to allege such specific acts, that plaintiff must sustain the burden which he has voluntarily undertaken, and cannot recover unless he can prove by a preponderance of the evidence the acts charged. In many states other than Louisiana this contention has been sustained. For instance, in Corpus Juris, vol. 45, p. 1225, Verbum Negligence, sec. 786, is found the following:

"As the application of the doctrine of res ipsa loquitur proceeds on the theory that, under the special circumstances which invoke its operation, plaintiff is unable to specify the particular act of negligence which caused the injury, or that defendant is in a better position to do so, the authorities are practically uniform * * * that where the allegation of negligence is general only and is unaccompanied by specific averments which go to the breach of the duty relied on, plaintiff is entitled to invoke the presumption of negligence arising under the rule of res ipsa loquitur. However, as stated in some of the cases, there is considerable conflict in the authorities as to the effect of plaintiff's pleading specific acts of negligence as the cause of injury upon his right to rely on or invoke the doctrine under consideration. Thus, in conformity with the general rule that, where a declaration based on negligence avers a particular act as to the cause of the damage, plaintiff in order to recover must establish the specific negligence alleged, it is held in some jurisdictions that, where plaintiff, instead of relying upon a general allegation of negligence, sets out specifically the negligent acts or omissions complained of, the doctrine of res ipsa loquitur cannot be applied, even though the case was a proper one for the application of the doctrine under a general allegation of negligence only."

But we need not concern ourselves with the question which is presented by plaintiffs having thus unnecessarily alleged specific acts of negligence and with regard to the jurisprudence of other states on the subject, since, so far as this state is concerned, the jurisprudence, scant as it is, is to the effect that in such situations as would ordinarily render the doctrine of "res ipsa loquitur" applicable allegations of specific charges of negligence are merely surplusage, and do not deprive plaintiff of the benefit of the doctrine, if, in addition to the specific charges, there is a general allegation of negligence. In Frazier v. South N. O. Light & Traction Co., No. 8608 of our docket (not reported) [see Louisiana and Southern Digest], it was contended, just as defendant contends here, that the doctrine of "res ipsa loquitur" is not applicable where plaintiff alleges specific acts of negligence, but this court said:

"But the defendant argues that the above rule is correct when the plaintiff makes only a general allegation of negligence on the part of the carrier; but if he alleges the specific acts of negligence, the burden of proof is shifted to the plaintiff who must prove those acts or fail in his suit. In support of his position he quotes numerous authorities from other States, but none from this State.

"The plaintiff in this case does allege general negligence on the part of the defendant. Inasmuch as under our jurisprudence that allegation was sufficient to entitle plaintiff to recover, we consider all the specific allegations of negligence as mere surplusage, and not essential to be proven by plaintiff."

We find in the petition a general charge of negligence as follows:

"Your petitioners show that all of said damage, suffering and death was caused by defendant's negligence. * * *"

Since, then, the doctrine of "res ipsa loquitur" is applicable, the burden is on defendant to show by a preponderance of the evidence that there was no negligence on its part, and we have reached the conclusion that in this case it has failed. It is true that the record does not show pre-

cisely what did cause the explosion, but this is not enough to relieve defendant from liability, particularly since there are shown three possible causes, none of which could have occurred without negligence on the part of defendant.

According to McLean, a boiler expert, the explosion occurred because the boiler, or tank, had been weakened by the removal of a ring of bolts and the substitution therefor of electrical welding. Surely, if this was the cause, defendant was liable. In Myhan v. La. Electric L. & P. Co., 41 La. Ann. 964, 6 So. 799, 800, 7 L. R. A. 172, 17 Am. St. Rep. 436, the Supreme Court said:

"At any rate, it was the duty of the defendant company to have known of the dangerous character and condition of the wires. The knowledge which they ought to have had, the law presumes, juris et de jure, they had. Even had the company's representatives sworn that they did not know of the same, such ignorance on their part would not have exculpated them. A superior is presumed to know, and in law knows, that which it is his duty to know, namely, whatever may endanger the person and life of his employee in the discharge of his duties."

In Potts v. Shreveport Belt Ry. Co., 110 La. 1, 34 So. 103, 98 Am. St. Rep. 452, we find the following:

"The fact that frequent inspections of the line were made to ascertain the condition of the wires and remedy defective insulation, does not relieve the company of liability. If the span wire had become dangerously charged with the electrical current, the company's inspection should have been thorough enough to have detected it. It is the company's business to know the dangerous defects in or along its lines, and, knowing, to safeguard the same."

In Whitworth v. South Arkansas Lumber Co., 121 La. 894, 46 So. 912, 914, the following language appears:

"The owner must manage to keep machinery in order, or else in case of accident he is exposed to liability. That is another issue settled by repeated decisions. Clairain v. Western Union Telegraph Co., 40 La. Ann. 178, 3 So. 625; Williams v. Lumber Co., 114 La. 805, 38 So. 567; Moses v. Grant Lumber Co., 114 La. 933, 38 So. 684; Roff v. Summit Lumber Co., 119 La. 571, 44 So. 302."

According to Liepsner, another expert placed on the stand by plaintiffs, the cause was the sudden injection into the tank, already partially filled with hot caustic soda solution, of an additional quantity of the cold solution, with the result that a liquid blow was struck on the bottom of the tank, causing it to break. He describes this phenomenon as follows:

"As this hotter liquid is forced near the upper part of the tank it is at a temperature above the boiling point of the more dilute solution, and then we get an almost explosive effect, due to the evaporization of the lighter lower boiling point solution at the top of the tank, and a sudden development of pressure within the liquid in the tank, resulting in a sudden blow—a liquid blow—which, in my opinion, caused the primary rupture of the tank at the bottom."

Surely, in an operation so extremely dangerous as is shown to be that of boiling out a tank with caustic soda solution, it is negligence not to know that the injection of cold solution into the tank containing boiling water may have just the result Liepsner suggests.

The third possible cause which is assigned by some of the witnesses is that the employees in charge of the tank may have closed the large ten-inch valve in the top of the tank, which, when open, allows the extraordinary pressure to escape. This last seems to us the most probable of the

three, as, after the accident, this valve was found almost entirely closed, and as one of the officials of the defendant, at the subsequent grand jury investigation, admitted that the valve had probably been left closed.

It is almost certain that the cause of the accident was one of the three occurrences to which we have referred, and, as we have already said, no one of them could have occurred without negligence on the part of defendant's employees. It necessarily results, therefore, that defendant is liable.

The judgments awarded $5,000 to each of the parents. That the suffering of decedent for almost twenty-four hours must have been beyond human comprehension cannot be denied. His clothing was literally burned from his body by the acid. It is practically impossible to place a monetary value on human life, and it is quite impossible to value in dollars and cents human suffering. No one knows whether the young man, had he lived, would have soon married. How long he would have continued to assist in the maintenance of his parents we are unable to say. We have considered many awards sanctioned by us and by the Supreme Court in other cases. We find it unnecessary to discuss items making up the respective claims of the two parents. Suffice it to say that, having given due consideration to many former awards, and in view of the exemplary habits of the young man and his most excruciating suffering during the last hours of his life, we believe the awards made by the jury should not be disturbed and are consistent with former allowances in similar cases.

The judgments appealed from are affirmed, at the cost of appellant.