This is a suit brought by Mr. and Mrs. Noah Simoneaux for the death of their minor son, Lloyd Simoneaux, aged 20, in which the defendants are Hudgins Braud, Lester Gonzales, Sheriff of the Parish of Ascension, and American Bonding Company of Baltimore, the surety on the bond of the Sheriff.
According to the evidence, on Sunday, January 17, 1937, Lloyd Simoneaux, accompanied by his fourteen year old brother and two friends, drove from the country to the Village of Gonzales. At about 4 o'clock in the afternoon they visited a place known as "Casso's Restaurant," consisting of a restaurant, saloon and dance hall, located within the limits of the Village of Gonzales, where they spent some time, during which Lloyd Simoneaux seems to have remained in the portion of the building containing the bar.
It seems that shortly after sundown Lloyd Simoneaux decided it was time to go home and thereupon he attempted to go into the dance hall to get his friend, Gregoire, to leave or let him have the key of the Simoneau car. Vic Mire, the manager of the establishment, refused to allow Lloyd Simoneaux to enter the dance hall, claiming that he was not properly dressed, but offered to go and get the key for him. Mire returned a few moments later and informed young Simoneaux that Gregoire had ordered one more drink and would see him in a couple of minutes. Thereupon Simoneaux apparently stated that he would just as soon be in jail as around that place. Mire then called Hudgins Braud, who was acting as town marshal or policeman, and told him that young Simoneaux wanted to go to jail. Thereupon Braud arrested Simoneaux and carried him to the village jail of Gonzales and, while Braud was unlocking the jail door, Simoneaux started to run away. Braud chased Simoneaux and fired his pistol (so he says) to frighten Simoneaux and the bullet struck Simoneau in the back of the neck and killed him instantly. Braud testified that he shot on the ground and the bullet ricocheted, thus striking young Simoneaux. Lloyd Simoneaux's young brother and another boy, testifying for the plaintiffs, testified that they heard Braud exclaim when Lloyd ran away, "I'll get you, you _____", which, if true, would indicate that Braud deliberately shot at him. In any event the evidence makes it perfectly clear that the death of Simoneaux was caused by conduct on the part of Braud, which would render Braud liable for said death.
The evidence is also clear that Braud had been appointed by the Mayor of Gonzales to act as marshal of the Village of Gonzales on the day of the shooting because of the absence of the duly elected marshal and that he was wearing a police badge of the Village of Gonzales which was worn by the marshal of that village and that he had the keys of the village jail in his possession and that he was performing the customary police duties of the town marshal in maintaining order around the dance halls within the limits of the village.
It is also shown that Hudgins Braud was a duly appointed and commissioned Deputy Sheriff in and for the Parish of Ascension.
There is no evidence to the effect that Braud had been instructed by the Sheriff to do police duty in the Village of Gonzales or at Casso's Restaurant in his capacity as Deputy Sheriff, and it was not shown that he was arresting young Simoneaux on any warrant or charge which would have caused the Sheriff of the parish to make or have made such an arrest.
The District Judge found that Braud was acting as marshal and not as Deputy Sheriff at the time that he shot Lloyd Simoneaux.
The District Court rendered judgment in favor of the plaintiffs and against Hudgins Braud for the sum of $1,700 and dismissed the suit as to Sheriff Gonzales and his surety. From this judgment the plaintiffs took an appeal. Hudgins Braud neither appealed nor answered the appeal taken by the plaintiffs.
It will be noticed that this suit was brought by the mother and father of *West Page 37 
the deceased and that in their petition they did not negative the existence of a wife or minor children of the deceased, and the petition clearly did not contain the technical recitals to make out a cause of action on behalf of the plaintiffs.
However, although various exceptions were filed by the defendants, none was filed which could be leveled at this defect because every exception that was filed was directed particularly at some other alleged defect in the petition.
The defendants, after the exceptions had been overruled, filed answer and tried the case on the merits and made no objection to the taking of testimony, and the case came before this court in the situation above stated.
In the Court of Appeal all three defendants filed an exception to the effect that "plaintiffs have not alleged nor proven that they are entitled to a right of action in the within suit".
Although Hudgins Braud did not appeal from the judgment rendered against him nor answer the appeal, nonetheless the Court should not consider the appeal taken against him, which could result in an increase of the judgment, with the petition not containing the recitals necessary to a right of action. However, the Court, should not dismiss the suit against Hudgins Braud because of the technical defect if we are to follow the jurisprudence as set forth in the case of Smith et ux. v. Monroe Grocery Company et al., La.App., 171 So. page 167. Where the petition manifestly alleges every fact that can be alleged, and yet a cause of action was not disclosed, no amendment should be permitted, but where, as in the instant case, it is probable that the plaintiffs can make proper proof of capacity to sue, such an amendment should always be allowed. Horrell v. Gulf, etc., Co., Inc., 15 La.App. 603, 131 So. 709. We are therefore of the opinion that the case should be remanded to permit the plaintiffs to amend their petition against Hudgins Braud and to take testimony to negative the existence of a wife or minor children of the deceased.
As to the defendants, Gonzales and American Bonding Company of Baltimore, although technically the same thing is true, nonetheless as they have, in their brief, asked that the judgment be affirmed and thereby acquiesced in the same, we can see how no good purpose could be served unless we felt that the facts of the case justified a reversal of the judgment which dismissed the suit as to Gonzales and the Bonding Company.
As said heretofore, the evidence is very clear that Hudgins Braud had been appointed to act as a substitute for the town marshal or policeman for the Village of Gonzales and was discharging those duties when he committed the act complained of. The only question is whether, because Hudgins Braud was also a deputy sheriff, the acts which he committed could be imputed to the Sheriff of the Parish.
Hudgins Braud was a resident of the Village of Gonzales and was apparently appointed in pursuance to Act No. 212 of 1918, which gives authority to the Mayor of any "incorporated village" to appoint any male citizen of the age of twenty-one years or more to act as marshal in the absence of the regular marshal. It is the contention of the plaintiffs that the act last named was repealed by Act No. 124 of 1928, which provides that any sheriff or deputy sheriff or constable of any parish or ward may act either as marshal or as tax collector of any village, city or town in the State, with the exception of the City of New Orleans, in the absence of the marshal. We are of the opinion that in any incorporated village of the State Act 212 of 1918 is also still in effect.
The evidence in the record makes it very clear that the duties of Braud as a Deputy Sheriff did not embrace that of maintaining order in the dance halls of the Village of Gonzales and that he only performed this duty when he was designated by the Mayor of Gonzales to act in the place of the town marshal and ex-officio policeman.
No duty imposed upon Braud as a Deputy Sheriff would have caused him to take young Simoneaux into custody or carry him to the village jail.
The Court of Appeal and the Supreme Court of Louisiana have both closely restricted and defined what acts on the part of a deputy sheriff can create a liability on the part of a sheriff and his surety.
In the case of Gray v. De Bretton, infra, it was alleged that the Deputy Sheriff was conveying a prisoner to the Parish jail for the Sheriff in an automobile when he negligently drove the automobile into the plaintiff, who was walking on a bridge on a public highway, causing injuries for which the plaintiff sued the Sheriff and the *West Page 38 
surety on his bond. In that case (Gray v. De Bretton, Sheriff, et al., 192 La. 628, 188 So. 722) the Court held that the Sheriff and his surety were not liable because the Deputy was not guilty of an improper discharge of his official duty as Deputy Sheriff.
The decision of the Court of Appeal was along the same line in the similar case of McVea v. Day, 6 La.App. 382.
In the case of Sanders v. Humphries et al., 143 La. 43, 78 So. 168, the Supreme Court of Louisiana dismissed a suit against the Sheriff and his surety when it was based on the allegation that Humphries was on duty as a Deputy Sheriff and, while acting as a deputy, agent, servant and employee of the Sheriff, maliciously and recklessly assaulted, shot and wounded the plaintiff without cause or provocation.
Our Supreme Court has consistently taken the position (in the case of Gray v. De Bretton and the other cases) that no liability attaches to a sheriff and his surety under the doctrine of respondeat superior or under the doctrines of master and servant and principal and agent for wrongful acts committed by the deputy. The wrongful act of the deputy must be strictly an act of misfeasance in office or wrongful performance of some official duty as deputy in order for the sheriff and his surety to be held.
If the law of master and servant had applied, it is clear that Sheriff De Bretton would have been held liable for the careless driving of his deputy which injured pedestrians on the road. This is not only the jurisprudence in Louisiana but seems to have been generally accepted wherever the question has been raised.
In this connection we would attract attention to a few typical decisions of courts of other states.
The Court of Appeal of Kentucky has held in the case of Commonwealth, for Use and Benefit of Coombs, v. Vincent, Sheriff, et al., 282 Ky. 95, 137 S.W.2d 1091, 1092, decided no longer ago than February 1940, "that a sheriff and the sureties on his bond are only liable for the acts of a deputy sheriff when the latter acts officially, and that a deputy sheriff is not acting within his official capacity when he makes an arrest not authorized by law". In that case it was held that where a deputy sheriff arrested a man for simply being drunk which was not a misdemeanor and "where deputy sheriff shot and killed person when he began running when deputy sheriff attempted to make arrest not authorized by law, sheriff and her surety were not liable for deputy's act, since he was not acting officially".
In the case of Graves v. Buzbee, 45 S.W.2d 392, the Court of Civil Appeal of Texas held, citing numerous authorities, that a sheriff's liability extends to "official acts" only of his deputy and not to unauthorized and unofficial acts, among which is classed an arrest and false imprisonment by a deputy who acts without a lawful warrant or other legal authority.
In the case of Brown v. Wallis, 101 S.W. 1068, the last named Court held that "in an action against a sheriff for injuries inflicted by his deputies, proof of the existence in some form of facts warranting the exercise of authority conferred upon them is essential to recovery."
In the light of the foregoing jurisprudence, whether the defendant Braud recklessly shot the decedent as he claims or whether he "maliciously" shot the decedent as is claimed in the petition of the plaintiffs, it does not appear that he did so under color of his office as Deputy Sheriff or in carrying out any duty of that office, and the Courts have held that the action must be both "virtute officii" as well as "colore officii" to constitute such malfeasance as to render the Sheriff liable.
We therefore think that the suit was properly dismissed as to the defendants, Gonzales and American Bonding Company of Baltimore, and see no reason for sending the case back as to these defendants to have the petition amended or additional evidence adduced as to capacity to sue.
It is accordingly ordered, adjudged and decreed that the judgment against Hudgins Braud be set aside and the case be remanded to the trial court for further proceedings not inconsistent with this opinion, leave being granted to the plaintiffs to amend their pleadings to adduce evidence thereunder in so far as the demand against defendant, Hudgins Braud, is concerned.
It is further ordered, adjudged and decreed that the judgment dismissing the suit of plaintiffs against Lester Gonzales and American Bonding Company of Baltimore be affirmed.
It is further ordered, adjudged and decreed that the cost of this appeal be paid by the plaintiffs.
LE BLANC, J., recused. *West Page 39