PER CURIAM.
Preston Veal brought suit against the State of Louisiana, Department of Institutions, Louisiana State Penitentiary, seeking damages in the amount of $100,000 for injuries allegedly sustained by him while an inmate of the said Penitentiary. His petition alleges that on or about September 21, 1966, he commenced working on what is known as the Stamping Machine, which stamps a design on bars of soap; that, he had never worked on the machine before and received no instructions from anyone relative to its operation, merely being told to do what everyone else did; that after operating the machine for about an hour and a half he reached to remove a stamped bar of soap off the stamping pad and the machine’s press suddenly and without warn *911 ing rushed down, crushing plaintiff’s thumb on his left hand and amputating the distal portion thereof; and that the necessary surgical procedure further amputated his thumb at its joint. He prayed that he be permitted to prosecute his cause in forma pauperis.
Plaintiff had secured legislative waiver of immunity from suit and from liability on the part of the State and attached a copy of the legislative act to his petition.
An answer of general denial was filed on behalf of the defendant and in the alternative pled contributory negligence.
A pre-trial order was filed in this matter wherein plaintiff asserted his claim and urged the application of the doctrine of res ipsa loquitur, and the defendant took the position that said doctrine was not applicable.
Trial was held on May 21, 1969, and for oral reasons assigned that date judgment was rendered in favor of defendant rejecting plaintiff’s demands. Judgment was signed June 11, 1969, and plaintiff appealed said judgment.
Plaintiff’s brief sets forth one specification of error by the trial Judge, that is, in refusing to apply the doctrine of res ipsa loquitur to the facts of this case.
The trial Judge did not give any written reasons for judgment and we do not know whether he decided this case on the question of res ipsa loquitur not applying or whether he decided that the plaintiff was guilty of contributory negligence which would bar his recovery.
We will take these issues up in the order in which we have named them.
Plaintiff-appellant complains that the trial Court failed to apply the doctrine of res ipsa loquitur to the facts in this case. He cites several cases in support of this proposition and we have no quarrel with these cases, but we do not believe they fit the facts of this case.
The defendant-appellee cites the case of Dorman v. T. Smith & Son, 55 So.2d 587, in support of its contention. That case holds as follows:
“As has often been said, the doctrine of res ipsa loquitur is not applicable unless the facts leave no room for any different presumption than that the defendant was negligent. The reasons for the application of the doctrine of res ipsa loquitur are set forth in the leading case on the subject, Lykiardopoulo v. New Orleans & C. R. Light & Power Co., 127 La. 309, 53 So. 575. We discussed the reasons for the doctrine in Horrell v. Gulf & Valley Cotton Oil Co., 15 La.App. 603, 131 So. 709.”
Plaintiff testified that he and several other inmates were in the soap factory at 9:00 o’clock on the morning of September 21, 1966. Three of the inmates were Tom Tolliver, Eddie Meredith and Felice Gris-coe, whose addresses were unknown to the plaintiff. He testified that no one had attempted to show him how the work of stamping the soap was done, nor to give him any instructions at all, nor did he have orders to work on that particular machine. There were no free people in the soap factory at that particular time. He took upon himself the job of operating the machine as he had seen others do it, and this unfortunate accident was the result. He further testified that a Mr. King was in the soap factory part of the time, but a Mr. Terrell was the real overseer or foreman. Neither of them showed him how to operate the machine, nor did they give him any instructions to operate the machine.
Plaintiff further testified that there were three buttons with which to operate the machine, one on each side which had to be pressed simultaneously in order to make the stamper come down and imprint the mark or label on the soap, and there was another button, a bottom control button, which, when punched, would make the stamper elevate itself back up to its original position.
*912 Plaintiff testified under cross examination that he had seen other inmates in the soap factory playing a “game” of seeing how fast they could get their hands from the activating button to the pad, but denied doing this himself. It is a reasonable presumption that he could have been playing this “game” and did not get his hand out quick enough and the result was that the stamper came down and mashed his thumb.
The foreman, one of the free men in charge of the soap factory, a Mr. King, was the only witness for the defendant. He testified that the machine had been there ever since he had been working for the penitentiary and that he didn’t know how old it was. Whenever there were repairs to be done one of the inmates who was a mechanic always did the work. The machine had operated satisfactorily both before and after the time the plaintiff sustained his injury. For this reason we do not believe that the defendant was guilty of any negligence in maintaining this machine or in not having it in proper working condition. The fact that you had to press both buttons at the same time to activate the stamper, which would require the use of both hands, would prevent the user from getting his hand caught in this machine. This looks like about as good a safety device as you could get.
Of course we realize that a machine under the control of the owner when an accident results from the operation of it places the burden on the owner to show that there was no negligence on his part. However, the fact remains that there was no one injured prior to the time that plaintiff operated the machine nor after he had his accident. In fact the plaintiff operated the machine a while before the accident occurred and this would corrobate the proposition that the machine was in good working order, so this leaves wide open the question that the plaintiff was guilty of contributory negligence by playing a game which he described in his testimony as seeing how quick they could get their hands up and place the soap bar under the stamper before it came down.
Mr. Arlie King testified that he had been working for the State Penitentiary, and although he was at the time of the trial on detail as an industrial foreman, at the time of the accident he was assigned to deliver all industrial products outside of the penitentiary, and to assist Mr. Terrell when he was on the farm. He was familiar with the operation of the soap factory, and he confirmed the testimony about the buttons to be pressed to operate the machine in question, as given by appellant. He identified the pictures offered in evidence as a fair representation of the machine as of September 1968. He learned of the accident first from Mr. Terrell. He testified that he possibly was there at the time of the accident but in' some other part of the plant.
When asked whether he knew of any repairs that had been made to this machine around the time of the accident in question in September of 1966, Mr. King testified “not to my knowledge, no sir.” He said he did not know of any problems that the machine had in cycling without the buttons being pressed at any time, before or after September 21, 1966. He testified that approximately four or five months before the trial, or May 21, 1969, almost three years after the accident, “I had a button broke, the little black part broke and I had a new entire button put on myself.”
We therefore believe that in either event defendant has shown no negligence on its part. The machine was as fool proof as it could be made and that without some negligence or “game” being played, it was impossible for anyone to get his thumb caught in the way the plaintiff did. The machine was functioning properly before the accident and for several years after the accident and we do not see how under these circumstances the defendant could be guilty of any negligence.
There is a reasonable hypothesis that the plaintiff was imitating others he *913 had seen operate the machine and playing a game with the stamper, and if so, he evidently decided he could play the game as well as the others and he happened to get caught. At any rate, we fail to find where there is any negligence on the part of the defendant.
For these reasons the judgment of the lower Court is affirmed. All costs, including cost of this appeal, to be borne by plaintiff.
Affirmed.