ELLIS, Judge.
This is a suit by a compensation carrier for recovery of benefits paid by it to an injured employee of a distributor of Gulf Refining Co. Maryland Casualty Co., the insurer of the distributor, averred negligence on the part of Gulf Refining Co. in the ownership and maintenance of a certain gasoline pump. The public liability insurers of Gulf Refining Co. were joined *785 as party defendants. The plaintiff is seeking recovery upon the grounds that it was subrogated to the rights of the employee against the defendant to the extent of the payments made by it to him.
To the initial suit exceptions of no right of action and no cause of action were filed. The lower court sustained exception of no right of action and dismissed plaintiff’s suit. The plaintiff appealed and this court transferred the cause to the Supreme Court of Louisiana. See La.App., 77 So.2d 752. The Supreme Court retransferred to this court, 231 La. 714, 92 So.2d 697. We reversed the district court, maintaining the exception was in reality one of no cause of action and that consequently the lower court erred in admitting evidence in support of the exception. See La.App., 95 So. 2d 734.
The case was again submitted to the dis- ■ trict court upon the same factual stipulation as governed its submission under the exception. The lower court held the plaintiff had not established its case and accordingly rendered judgment dismissing the suit.
The stipulation of facts contained in the record are as follows:
1. That J. W. Stewart, a distributor of Gulf Refining Company products, was the employer on or about May 21, 1952, of William Herbert Langston, in connection with the employer’s distributorship being then conducted in DeRidder, Louisiana.
2. That the business being conducted by J. W. Stewart is considered hazardous within the meaning and contemplation of the Louisiana Compensation Statute.
3. That on or about May 21, 1952, William Herbert Langston sustained an accident, compensable under the provisions of the Louisiana Statute, while engaged in the course and scope of his employment.
4. That Maryland Casualty Company was, at the time, the Workmen’s Compensation insurer of J. W. Stewart, and as such, subsequently paid Langston, or for his benefit, the sum of $420 in workmen’s compensation benefits, and a further sum of $600 for medical and hospital care and attention, and a final sum of $2,500 in compliance with the terms of a Court approved settlement of Langston’s claim for further statutory benefits.
5. That the payments made by plaintiff, Maryland Casualty Company, to William Herbert Langston, as above detailed were reasonable, fair and equitable, and so approved by this Honorable Court.
6. That as a result of Maryland Casualty Company’s payments to William Herbert Langston, it brings the present suit against Gulf Refining Company and its public liability insurers, The Travelers Insurance Company and The Travelers Indemnity Company, under the provisions of R.S. 23:1162, as subrogee to the rights, if any, of William Herbert Langston, against these defendants, on the allegations of negligence levelled against Gulf Refining Company in the original, amended and supplemental petitions filed by plaintiff.
7. The record in this cause, and particularly plaintiff’s original and supplemental and amended petitions, and the exceptions of no right or cause of action and the answer filed by defendants, Gulf Refining Company, The Travelers Insurance Company and The Travelers Indemnity Company.
8. Deposition of C. B. Prescott, taken pursuant to notice and agreement of counsel before Ferdinand E. Zimmer, Notary Public, at New Orleans, Louisiana, on Thursday, August 20, 1953, and marked for identification with this stipulation “E-l”.
9. Deposition of J. W. Stewart, taken pursuant to notice and agreement of counsel before Louise W. Talley, Court Reporter, 30th Judicial District, and a Notary Public in and for Vernon Parish, Louisiana, on July 31, 1953 together with attached documentary exhibits marked for identification with the testimony as “Gulf I”, and “Gulf II” and “Gulf III”, with deposition is marked for identification with this stipulation “E-2”.
*786 10. Certified photostatic copy of the charter and amendments of Gulf Refining Company, marked for identification with this stipulation as “E-3”.
11. This stipulation.
12. Gulf Refining Company is a foreign corporation which does business in the State of Louisiana. The Travelers Insurance Company and The Travelers Indemnity Company are foreign insurance corporations authorized to do business in the State of Louisiana.
13. In the event of plaintiff’s recovery, it is stipulated that the Court may fix the fees of the plaintiff’s attorneys in the amount of $500.
14. It is further admitted that on or about May 21, 1952, William Herbert Langston, emplee of J. W. Stewart, distributor of Gulf Refining products, was unloading gasoline from his employer’s tank truck at the J. L. Laurent Gulf Station, De-Ridder, Louisiana, and was standing between the said truck and the gas pump when suddenly and without warning of any kind everything around the said gas pump was on fire, including said Langston, who sustained the burns and injuries for which he was paid workmen’s compensation benefits in the manner and to the extent detailed in stipulation and hereof.
15. It is further admitted that the J. L. Laurent Gulf Station was owned by Gulf Refining Company, but operated by J. L. Laurent, Jr., under a lease agreement with said Gulf Refining Company, and the pump which caught fire was owned by Gulf Refining Company and had been installed by the latter approximately two years prior to May 21, 1952.
16. It is further admitted that the wiring in said Gulf Refining Company pump which caught fire and exploded was faulty and that such fact was confirmed by an employee of Gulf Refining Company, who made an investigation thereof shortly following the accident of May 21, 1952.
No additional evidence was offered and the cause was submitted to the lower court on the above stipulations and the evidence submitted upon the trial of the exceptions. The question presented on the merits is whether or not Stewart, the distributor of Gulf Refining Co. was an independent contractor performing part of the trade business, business or occupation of the Gulf Refining Co. under LSA-R.S. 23:1061, so that Stewart’s employee, the injured workman, had a cause of action for workmen’s compensation against Gulf, which consequently would exclude any cause of action in tort against Gulf Refining Co. If the employee had an action for workmen’s compensation against Gulf, then this cause of action would be exclusively one for compensation and could not be asserted against Gulf, the principal of Stewart, in an action ex delicto. This is true since the compensation provided for by the Workmen’s Compensation Act is exclusive of all other remedies. See Labourdette v. Doullut & Williams Ship Building Co., 156 La. 412, 100 So. 547; Brooks v. American Mut. Liability Ins. Co., La.App., 7 So.2d 658; Sisk v. L. W. Eaton Co., La. App., 89 So.2d 425.
LSA-R.S. 23:1061 provides:
“Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; * *
Under the provisions of this statute if Stewart was acting as a contractor of Gulf *787 or was engaged in the performance of any part of Gulf’s occupation, trade or business, then Gulf was liable to the injured employee under the Compensation Act for personal injuries received by him while in Stewart’s employ. If such is the finding herein, the remedy of the employee being exclusively one for compensation, his sub-rogee cannot maintain an action ex delicto against either Stewart, Gulf Refining Co. and/or its liability insurers.
There was filed in evidence, in connection with the stipulation, the deposition of Mr. C. B. Prescott, manager of retail sales of Gulf and accounting division general manager. He testified that Gulf utilized distributors in that they distributed petroleum products for Gulf on a commission basis as independent merchants or contractors. He stated that Stewart, the distributor of Gulf products and employer of Langston, was operating under the standard form of distributors contract. This contract was labeled “consignment agreement”. Under it Gulf agreed to ship and consign to Stewart stocks of petroleum products and specialities at a Gulf Station, operated by him and leased by Gulf. Gulf fixed the prices at which products were to be sold and Stewart had charge of the stock, and made sales and deliveries. He also made reports of the quantity sold and the remaining inventory. He remitted the proceeds of the sales at stated intervals. His compensation was a fixed price per gallon on the petroleum products and a percentage on the invoice price of specialties. All of the petroleum products remained the property of Gulf until sold. Stewart had the power to hire and fire his employees, fix their wages and direct and supervise their labor. He also had authority to fix his own hours of business and was allowed ■to use the words “Distributor, Gulf Oil Products” on stationery, delivery statements and equipment.
Stewart, the distributor, testified that while he purchased from Gulf some items such as tires, tubes, batteries and accessories, he received gasoline and petroleum products on consignment; that he received no salary and his earnings depended upon the volume of sales made.
Part of the documentary evidence filed herein was a lease of the Bulk Plant. The lease calls for a rental of $41. The term of the lease was from year to year with a provision that either party could notify the other, in writing, at least 30 days in advance of the end of the year that the lease should not be renewed or extended.
The following provisions on the consignment agreement are interesting to note, viz.:
“Consignor is interested only in results in terms of increased volume of sales of Consignor’s products and the means, methods and details are left entirely to the discretion and judgment of the Consignee, who shall have entire charge and control of the management of said business for the purpose of the accomplishment of said results.
“It is expressly agreed and stipulated that neither Consignee nor the employees of Consignee shall be deemed or construed to be employees of Consign- or. Consignee further agrees that he will carry employer’s liability, workmen’s compensation and public liability insurance for himself and his employees, as far as he legally can.
“Consignee is authorized to use the words ‘Distributor, Gulf Oil Products’ on stationary, delivery tickets and equipment and Consignee shall not represent himself, nor permit any of his employees to represent themselves as agent or employer of Consignor. Consignor assumes no responsibility for the acts or omissions of Consignee, his servants or employees, in the management or operation of said business, negligent or otherwise, and Consignee covenants and agrees to idemnify and hold Consignor harmless against any and all such claims.”
*788 It appears in the deposition of C. D. Prescott that Gulf Refining Company often ■directly employs salaried distributors to operate its bulk plants and distribute its pro■visions to retail dealers. He further testified concerning the two methods of distribution :
“Mr. Mouton: Q. What is generally the policy of the Gulf Refining Company with reference to the establishment of distributorships such as Stewart’s, as distinguished from the bulk stations which Gulf operates directly?
“Mr. Prescott: A. Well, the primary distinction usually runs on the basis of the volume and the location. For instance, in a City the size of New Orleans, we would operate it because of the magnitude. There is no one individual likely to have enough capital to operate a distributorship in the City of New Orleans: but in a smaller place like Leesville, why, it is to our mutual advantage to have a local man acting as a resident or independent contractor in that area, where he has connections with the local people and so forth, to distribute Gulf products. That is the primary difference between the two. It is a question of economics.”
It is apparent from the record that the only controls exercised by the consignor, ■Gulf Refining Company, were the right to -control the prices at which consignee sold ■Gulf products and the right to audit the accounts and inventory any products held by consignee.
Under the facts and contracts described •above, it is felt that Gulf Refinery Company had done all in its power to negative any possible finding that an employer-employee relationship, which includes the ■principal contractor and sub-contractor relationship, existed between the company .and Stewart and/or Stewart’s employees.
Nevertheless, it is felt that this is a rsituation in which the rule recognized in the case of Isthmian S. S. Company of Del. v. Olivieri, 5 Cir., 202 F.2d 492, 494, should be applied. The rule is stated concisely in the Isthmian case, as follows:
“On the law, the Louisiana cases are of course controlling. Those cases have settled that the compensation statute is to be liberally construed so as to include all services that can reasonably be said to be within the statute not only when the injured person seeks its protection, but when he attempts to have himself excluded from the coverage of the act. The decisive factors are the nature of the employee’s work and of the principal’s trade, business, or occupation. Unless the work is of such a special or separate character as would not ordinarily or appropriately be performed by the principal employer’s own employees in the prosecution of its business or as an essential part thereof, it is a part of the principal’s trade, business or occupation. Dandridge v. Fidelity & Casualty Co., La. App., 192 So. 887, 891; Thibodeaux v. Sun Oil Company, La.App., 40 So.2d 761, 764, 765, affirmed 218 La. 453, 49 So.2d 852; Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137, 144”.
In the case of Jones v. Pan American Petroleum Corporation, La.App., 190 So. 204, 207, which is relied upon strongly by counsel for plaintiff, a different fact situation is presented. In that case W. B. Warren and J. L. Warren, individually, leased a lot to Pan American Petroleum Corporation. Under the lease Pan American Petroleum Company built a filling station on the lot. After the station was completed it was leased by Pan American Petroleum Corporation to Warren and Warren, Inc., the latter corporation being the wholesale distributor for Pan American Petroleum Corporation in that territory. Warren & Warren, Inc. then leased the station by oral agreement to Leanard Lemle. One of Lemle’s employees was injured and sued Pan American Petroleum Corporation along with several other par *789 ties for his injuries. The court found an absolute lack of control on the part of Pan American and stated in effect, that it could not tell from the record the extent of control Pan American had over the sale of oil and gasoline at the station and held that the evidence was not “sufficient for us to hold that the business operated by Leonard Lemle and his partner, Hale, was the business of the Pan American Petroleum Corporation”.
Although this holding is not absolutely •clear on this point the gist of it is that Lemle’s retail gasoline business was not a ■part of the regular business of Pan Ameri■can Petroleum Corporation.
In the case at bar, it is clear that the •distribution on the wholesale level to retail ■outlets was actually an integral part of the business of Gulf Refining Company.
For the reasons assigned, the judgment -of the lower court is hereby affirmed.
Affirmed.