193 So.2d 807 (1967)
Juanita Breaux MECHE, Individually and as Tutrix, etc., Plaintiff-Appellant,
v.
FARMERS DRIER & STORAGE COMPANY, Inc., et al., Defendants-Appellees.
No. 1864.
Court of Appeal of Louisiana, Third Circuit.
January 11, 1967.
Rehearing Denied February 1, 1967.
Writ Refused March 10, 1967.
*808 Edwards & Edwards, by Nolan J. Edwards, Crowley, for plaintiff-appellant.
Lewis & Lewis, by Seth Lewis, Sr., Opelousas, Jacque Pucheu, Eunice, Russell T. Tritico, Lake Charles, for defendant-appellee.
Before TATE, FRUGÉ, and HOOD, JJ.
TATE, Judge.
This is a wrongful death action. The plaintiff widow appeals from judgment dismissing her suit.
In 1964 the decedent Meche was killed in an elevator accident while working in the warehouse of Farmers Drier and Storage Company (Farmers). At the time, Meche was performing rat-control services as an employee of a pest exterminating *809 company (Industrial). His widow, the plaintiff, sues in tort to recover damages for herself and the children of the marriage. The defendants are Farmers, its liability insurer, and also the manufacturer of the elevator which fell (Houston Belting).[1]
The principal issues of this appeal are: (1) whether Meche was injured in the execution of work which was part of the trade, business, or occupation of Farmers so as to make the workmen's compensation statute the plaintiff's exclusive remedy against Farmers, LSA-R.S. 23:1032, 23:1061; and (2) whether Houston Belting is liable in tort for Meche's death as the manufacturer of the elevator.
1. Applicability of the Louisiana workmen's compensation statute.
An employer or principal subject to liability for workmen's compensation benefits cannot be held liable in tort to an injured employee or his survivors, since under LSA-R.S. 23:1032 the compensation remedy is then exclusive. Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852; Best v. J & B Drilling Co., La.App. 3 Cir., 152 So.2d 119; Malone, Louisiana Workmen's Compensation, Sections 361, 366 (1951). A principal who contracts out part of his business for execution through independent contractors is nevertheless liable for workmen's compensation benefits to the contractor's employee or his survivors if the employee is injured in the execution of such work. LSA-R.S. 23:1061; Malone, Section 121.
Therefore, the plaintiff widow cannot recover against Farmers in tort if her husband was killed in the performance of work which was a regular and integral part of the business of operating rice warehouses such as Farmers at the time and in the general area, since workmen's compensation is then her exclusive remedy.
The fundamental purpose of the statutory liability of a principal to the employees of his subcontractor, LSA-R.S. 23:1061, is to prevent principals from contracting out their work in order to evade liability for workmen's compensation benefits to employees actually utilized in the principal's business. Shird v. Maricle, La.App. 3 Cir., 156 So.2d 476; Malone, Sections 121-127. The principal therefore cannot contract out the essential economic activities of an enterprise to impecunious subcontractors so as to exculpate himself from compensation liability, as is sometimes attempted for instance in timber products enterprises.
A difficult question may sometimes be presented, however, as to whether fringe activities incidental to the conduct of the enterprise are nevertheless a part of the principal's trade, business, or occupation when performed by subcontractors. In such instances, to determine if the work in which the employee is injured is part of the principal's business, one relevant factor is whether such work is customarily considered a part of the regular business of employers performing through their own employees the work of the occupation in which the principal is engaged. Shird v. Maricle, La.App. 3 Cir., 156 So.2d 476; Finn v. Employers Liability Assurance Corp., La.App. 2 Cir., 141 So.2d 852, 867-870 (p. 870: work is part of employer's business if "usually or customarily performed by those engaged in businesses similar in character"); Dandridge v. Fidelity & Casualty Co., La.App. 2 Cir., 192 So. 887; Horrell v. Gulf & Valley Cotton Oil Co., Orl., 15 La.App. 603, 131 So. 709; Tucker v. Texas Co., 203 F.2d 918 (CA 5, 1953, interpreting Louisiana law); Malone, Section 125.
As these cited sources note, a pertinent consideration in this respect is whether employers engaged in the same *810 business as the principal generally do such work directly through their own employees rather than through specialized agencies or outside contractors. See also Maryland Casualty Co. v. Gulf Refining Co., La.App. 1 Cir., 110 So.2d 784. Whether the work is a part of the principal's business may present a question of fact which can be decided only after resolution of conflicting evidence on the issue. Shird v. Maricle and Tucker v. Texas Co., cited above.
The testimony of all witnesses establishes that it is necessary to control and eradicate rats and mice in rice mills and warehouses. If the rats and mice are not eliminated, they will eat their way into the rice and live, breed, dirty, and die there. The federal government, under the authority of the Pure Food and Drug Act, will not allow the continued operation of a warehouse if the rodents are not strictly controlled.
The witnesses further testified that, prior to the late nineteen forties and federal Pure Food inspections, the rice warehouses and mills of the area performed rodent extermination and control functions through their own employees. However, since World War II and the stricter federal inspection which followed, the witnesses agree that at least a considerable percentage of rice warehouses in the Eunice area have engaged in the specialized (and more effective) services of exterminating firms to perform this function.[2]
Nevertheless, although the stronger poisons are put out and used solely by the employees of these specialized firms, the record also indicates that even in rice mills utilizing their services some of the rat exterminating work is still done by the warehouse's own employees, such as putting out "tracking powders" and fumigants. Considering this evidence, as well as substantial testimony that some rice mills and warehouses still perform the work of rodent extermination through use of their own employees only, we are not prepared to hold that the trial court committed manifest error in accepting testimony that in this present transition period the work of rodent extermination is still customarily considered to be a regular and integral part of the business of operating rice warehouses in the Eunice area.
We recognize the force of the plaintiff-appellant's argument that Meche himself was engaged in a specialized service. His principal duties were in the application of a special poison ("10-80"), which is kept in locked boxes and is permitted to be used and controlled only by a trained exterminating company employee.
We find this argument persuasive, but not determinative. If the general function of rodent control is indeed part of the principal's business, then in our opinion the use of a particularized product to perform this function would not necessarily and by itself determine that the employee was no longer engaged in work forming a regular part of the principal's business. Meche's extermination work constituted a regular, normal, and recurrently necessary part of the operation of a rice warehouse. The instances relied on by the plaintiff, Finn v. Employers, etc., La.App. 2 Cir., 141 So.2d 852; Horrell v. Gulf & Valley Cotton Oil Co., Orl., 15 La.App. 603, 131 So. 709, concerned construction and repair work not regularly done by the principal's employees and requiring special skills needed only at infrequent and irregular intervals.
We therefore hold that Meche's survivors cannot recover in tort against Farmers and its liability insurer, since their sole remedy against Farmers was for workmen's compensation because Meche was killed while performing work which was part of Farmers' trade, business, or occupation.
*811 2. Liability of the manufacturer of the elevator.
The fatal accident occurred while the decedent Meche was in Farmers' warehouse in connection with his extermination work. He was riding in an elevator which had been sold to Farmers by the co-defendant Houston Belting. The cable suspending the elevator broke. The only safety device on the elevator failed to function properly, so the elevator fell three stories, killing Meche.
The plaintiff widow's petition alleges that Houston Belting is liable for her husband's death because the elevator's safety or stopping devices or its cable were faulty or insufficient or because the elevator was improperly constructed. (Other allegations of improper installation are disregarded, because the evidence conclusively shows that the purchaser Farmers, not the seller Houston Belting, was responsible for the installation of the elevator.)
A manufacturer or seller of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part sustains an injury caused by a defect in the design or manufacture of the article, if the injury might have been reasonably anticipated. Smith v. New Orleans & Northeastern Railroad Co., La. App. 1 Cir., 153 So.2d 533; Samaha v. Southern Rambler Sales, Inc., La.App. 4 Cir., 146 So.2d 29; Restatement of Torts 2d, Section 402(A)[3]; Prosser, The Law of Torts, Chapter 19 (3d ed., 1964); 65 C.J.S. Negligence § 100(2). Cf. also: Percy, Products LiabilityTort or Contract or What?, 40 Tul.L.Rev. 715 (1966); Note, TortsStrict Liability of the Manufacturer, 23 La.L.Rev. 810 (1963).
In the present case, the component parts of the elevator had been sold to Farmers by Houston Belting in package form with instructions for the assembly and installation of the elevator. The elevator had been purchased and installed by Farmers eleven years before the accident. It was under Farmers' complete control and, prior to the accident, had worked satisfactorily during those years.
Without detailed discussion of the evidence, we find no error in the trial court's evaluation of it as preponderantly showing (1) that the component parts of the elevator were properly made and would function properly if installed and maintained properly, and (2) that the fall of the elevator was due to improper installation or maintenance by Farmers, the purchaser, with the safety mechanism's failure to work attributable to some faulty adjustment in Farmers' installation or maintenance of it.
Under these facts, no breach of duty alleged or proved on the part of Houston Belting was a substantial factor contributing to the accident so as to be a proximate cause of it. The trial court correctly dismissed the plaintiff widow's wrongful death action against this defendant.
*812 Decree.
The trial court judgment in favor of the defendants-appellees is affirmed at the cost of the plaintiff-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] The workmen's compensation insurer of Industrial, the decedent Meche's employer, intervenes to recover for compensation benefits paid his widow as a result of his death.
[2] Industrial, the decedent Meche's employer, had for instance contracted to perform rodent control services for Farmers for $35 monthly.
[3] Entitled "Special Liability of Seller of Product for Physical Harm to User or Consumer", Section 402(A) provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
"(a) the seller is engaged in the business of selling such a product, and
"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
"(2) The rule stated in Subsection (1) applies although
"(a) the seller has exercised all possible care in the preparation and sale of his product, and
"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."