Elizabeth DEAN, wife of Roy Dye, individually and as Administratrix of the Estate of John Dye, Roy Dye, individually and as Next Friend of Michael Dye, and Dorian Williamson, wife of Joseph Lawrence Trentacoste, Jr., Plaintiffs,

v.

GENERAL MOTORS CORPORATION, Defendant.

Civ. A. No. 16263.

United States District Court
E. D. Louisiana,
New Orleans Division.

April 30, 1969.

On Motion for New Trial
July 1, 1969.

Adolph J. Levy, New Orleans, La., for plaintiffs, Elizabeth Dye and Roy Dye.

C. Cyril Broussard, New Orleans, La., for plaintiff, Mrs. Dorian William Trentacoste.

Peter L. Bernard, Jr., New Orleans, La., for defendant.

RUBIN, District Judge:

A thief stole a 1961 model Chevrolet station wagon on the night of January 22, 1965. The following day, while driving the stolen car under the influence of alcohol and at an excessive rate of speed, he ran into the side of a car in which two children were riding as guest passengers. As a result of the collision one of the children died and the other was seriously injured.

The thief was then 24 years old. He testified that when he was 18 he learned from a 13 year old boy a simple way to steal Chevrolets manufactured by General Motors Corporation ("GM") between 1954 and 1964. He could pry the cap off the ignition switch, pry the cylinder out, break the retaining tabs, and start the car with only a screwdriver as a tool, all within 30 seconds. He had stolen many cars in just this manner.[1]

The parents of the deceased and injured boys here seek to recover damages from GM on the ground that GM was negligent in designing the car's ignition lock. After a trial on the issue of liability, the court requested briefs and oral argument directed only to the question of whether there was negligence in design.

Technical skills have brought new designs and new products to the market in infinite variety. But advances beyond the tried and true have also exposed the public to a profusion of new risks. Having unbound the Prometheus of product liability from the cords of privity,[2] the courts have turned in-

1. There are some inconsistencies in the thief's testimony, but the defendant does not question the basic idea that the lock could easily be defeated in the manner described by him once the technique was learned.

2. See generally, Prosser on Torts, Chapter 19 (3d ed. 1964) and 2 Harper & James, Chapter 28 (1956). See also, generally, Annotation, 74 A.L.R.2d 1111 (1960) (in negligence action); Annotation, 75 A.L.R.2d 39 (1961) (in warranty action).

creasing attention to the scope of liability thus unfettered.

■ It is the manufacturer's duty to exercise reasonable care in the design and manufacture of its product if it is of a kind that, if not carefully made, would cause physical harm to those who use it for the purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use.[3] If the manufacturer fails to exercise such care, it is liable for physical harm "caused to them by its lawful use in a manner and for a purpose for which it is supplied." Restatement of Torts (2d), § 395. The manufacturer's duty, however, does not extend to protection of the whole world, nor does it involve all of the risks that might result in harm.

■ The Louisiana jurisprudence, which is controlling in this diversity case, makes it clear that the owner of an automobile is not liable if he leaves the keys in the lock, the car is stolen, and a third person is injured even though Louisiana's Highway Regulatory Act makes it unlawful for any person in charge of a motor vehicle to leave it unattended without removing the key. LSA–R.S. 32:145. Call v. Huffman, La. App. 2 Cir. 1964, 163 So.2d 397, cert. denied, "The judgment is correct," 1964, 246 La. 376, 164 So.2d 361; Berluchaux v. Employers Mutual of Wausau, La.App. 4 Cir. 1967, 194 So.2d 463. See also, Note, 22 La.L.Rev. 886 (1962) (Liability of Owner for Negligent Driving of Automobile Thief). A fortiori, Louisiana courts would not impose a duty to design a theft-free lock on the manufacturer for the protection of those who might be injured by theft of the automobile.

■ In addition, even if a duty of care to the plaintiffs should be found to exist, the evidence does not support the charge that GM was negligent. The general rule of manufacturer's liability in Louisiana has been stated as follows:

"A manufacturer or seller of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part sustains an injury caused by a defect in the design or manufacture of the article, if the injury might have been reasonably anticipated." Meche v. Farmers Drier & Storage Company, La.App. 3 Cir., 1967, 193 So.2d 807, 811, cert. denied, 250 La. 369, 195 So.2d 644.[4]

■ The Louisiana cases do not describe what is to be considered a defect in design. There appears to be little doubt, however, that, in determining this question in accordance with the general fault concept of Louisiana Civil Code Article 2315, Louisiana courts would follow the principles set forth in the Restatement of Torts (2d), Section 398:

"A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design."

■ The criterion by which liability is tested is "failure to exercise reasonable care in the adoption of a safe plan or design." The design must measure up to what the community is entitled to expect of those who persuade the public to buy their products—sometimes,

---

3. See, e. g., Montgomery v. Johnson Motor Lines, Inc., La.App. 1 Cir. 1967, 205 So.2d 218; Eversmeyer v. Chrysler Corporation, La.App. 4 Cir. 1966, 192 So. 2d 845; and Smith v. New Orleans & Northeastern Railroad Company, La. App., 1 Cir. 1963, 153 So.2d 533, aff'd on other grounds, 245 La. 1099, 163 So.2d 65.

See also the Arnold case, infra note 4, and the text accompanying note 4.

4. Accord, Arnold v. United States Rubber Company, La.App. 3 Cir. 1967, 203 So. 2d 764, cert. denied, 251 La. 738, 739, 206 So.2d 91.

as in the case of GM, by dint of tremendous advertising campaigns. The standard "reasonable care", is deliberately flexible; it permits the trier of fact to exercise judgment in determining what measure of care is appropriate. But there is no "defect" in the design if reasonable care is taken in adopting it, even though the design is not perfect. For the plan need not be foolproof, nor sure against all contingencies. Whether there was reasonable care depends upon facts known at the time it was adopted. And so we look to those facts.

The design of all parts used on the 1961 model Chevrolet was completed by 1957, as it had to be under normal manufacturing conditions, for it requires approximately three years to put an automobile on the market after all plans are finished. The basic design for the lock used on this automobile had been completed in 1934 although part of the lock cap had been redesigned in 1954. The evidence is clear that GM did not actually learn of the method employed by the thief in this case until 1963. The threshold questions on liability then are whether, in the absence of actual knowledge that the lock could so readily be defeated, GM failed in 1957, six years earlier, to use reasonable care to discover this possibilty and take steps to prevent it, and whether GM should have known of it and can therefore be charged with constructive knowledge.

GM's engineers knew that thieves would try to steal autos, GM's as well as other's. They knew that a screwdriver could be used to attempt to turn the lock in a circular manner and thus force it. In the 1961 Chevrolet, the key could be removed leaving the ignition switch in a position from which the car could be started by turning the cap without use of the key. The cap was therefore designed to fall off before any damage could be done to the interior of the lock if excessive pressure were applied in turning it.

The engineers also foresaw that an attempt might be made to steal the car by trying to drive the screwdriver into the lock using a forward attack. They remedied this by placing the lock on the instrument panel and allowing the panel to have a "bounce" to it so as to dissipate the energy of the blow. They knew that individuals would attempt physically to pull out the lock from the rear, so they attempted to remedy this possibility by the design of the keyway. They also knew that a screwdriver could be used to "dig the lock out."

But neither GM's engineers nor others skilled as locksmiths conceived of the particular method of theft utilized in this case. Had they envisioned it, they might have designed the lock or the cap differently. The expert testimony was that the lock system was equal to or better than any other in use at the time it was made. The uncontradicted testimony is that no expert had foreseen the method of defeating the lock that the clever juveniles so adeptly used.

After the lock had been used for many years, someone discovered a way to defeat it with ease. It is suggested that this demonstrates that GM should be held to constructive knowledge of the method. But the cases cited for this proposition do not support it.[5]

When an action is brought against a manufacturer in warranty, for a redhibitory defect in his product, Louisiana law imputes knowledge to the manufacturer. LSA-C.C. Art. 2545.

---

5. The plaintiff cites Otis Elevator Company v. Seale, 5 Cir. 1964, 334 F.2d 928; Payne v. Georgetown Lumber Company, 1906, 117 La. 983, 42 So. 475; and Nunez v. Modern Woodcraft Company, La.App. 4 Cir. 1967, 197 So.2d 339 for this proposition. The *Payne* decision merely holds that, once negligence has been established, the fact that the particular type of injury was improbable or not to be reasonably expected does not preclude liability; it is premised on an initial finding of negligence. The *Otis Elevator* and *Nunez* cases involve application of the rule of res ipsa loquitur where the thing that caused the injury was under the defendant's exclusive control and the injury would not have occurred if the person having control had exercised proper care.

See also the cases cited in Note, 28 La.L. Rev. 270, 271 n. 7; Radalec, Inc. v. Automatic Firing Corp., 228 La. 116, 81 So. 2d 830; Brown v. Dauzat, La.App. 3 Cir. 1963, 157 So.2d 570; Lartigue v. R. J. Reynolds Tobacco Co., 5 Cir. 1963, 317 F.2d 19, cert. denied, 375 U.S. 865, 84 S.Ct. 137, 11 L.Ed.2d 92. *Cf.* Samaha v. Southern Rambler Sales Inc., La.App. 4 Cir. 1962, 146 So.2d 29, 33. But where, as here, a delictual action is brought against the manufacturer, the usual rules applicable to proof of negligence in tort cases apply. *See* Meche v. Farmers Drier & Storage Company, La.App. 3 Cir. 1967, 193 So.2d 807, cert. denied, 250 La. 369, 195 So.2d 644; Arnold v. United States Rubber Company, La.App. 3 Cir. 1967, 203 So.2d 764, cert. denied, 251 La. 738, 739, 206 So.2d 91. There is an observation in the *Samaha* case, *supra*, that may be read to suggest that, in a tort case, Louisiana law imputes knowledge to the manufacturer, but we think that, considering the case as a whole, it does not depart from the rules established in the other Louisiana cases.

■ In this respect, there is no need to distinguish in principle between what is required to prove negligence in design and what demonstrates negligence in fabrication. The basic test is the same in both situations: failure to exercise reasonable care.[6] Louisiana does not impose absolute liability on the manufac-

turer.[7] Here the plaintiffs have failed to prove negligence, and the manufacturer has shown that its product was designed with reasonable care for safety in the use for which it was manufactured, measured by the knowledge available both at the time of design and manufacture.

■ Negligence is not proved merely because someone later demonstrates that there would have been a better way.[8] Reasonable care does not require prescience nor is it measured with the benefit of hindsight. Tort law does not expect Saturday manufacturers to have the insight available to Monday morning quarterbacks.

■ Of course, compliance with custom is not of itself sufficient to constitute due care. But as Professor Prosser puts it, "[Negligence] necessarily involves a foreseeable risk, a threatened danger of injury, and conduct unreasonable in proportion to the danger. If the defendant could not reasonably foresee any injury as the result of his act, or if his conduct was reasonable in the light of what he could anticipate, there is no negligence and no liability." Prosser on Torts, 3d ed. 1964, p. 288.[9]

■ A manufacturer whose design meets the hazards foreseen by experts in the field, in addition to those foreseen by the specialists in its employ; whose specifications are equal to or

---

6. *See* Annotation, "Manufacturer's or seller's duty as to product design as affecting his liability for product-caused injury," 76 A.L.R.2d 91, 94 (1961). See also the cases cited in notes 2 and 3 *supra.*

7. Judge Wisdom's opinion in Lartigue v. R. J. Reynolds Tobacco Company, 5 Cir. 1963, 317 F.2d 19, reviews the Louisiana jurisprudence with respect to manufacturer's liability. It points out, "In Louisiana under Articles 2315 and 2316, as in other states, a manufacturer of an injurious or defective product is liable to a consumer, when he fails to use due care in manufacturing a product. In the case of decayed foodstuffs or food products containing deleterious substances, the manufacturer is held to strict liability without regard to neg-

ligence." *See,* Comment, 22 La.L.Rev. 435 (1962) and the cases cited in Note, 28 La.L.Rev. 270 n. 6 (1968). Louisiana courts have not extended the rule of strict liability beyond articles intended for human consumption, even though courts in other states have applied the doctrine of implied warranty to other products. See, for example, the cases cited in the *Lartigue* case, 317 F.2d at 34.

8. *Cf.* Hatch v. Ford Motor Co., 1958, 163 Cal.App.2d 393, 329 P.2d 605. *See* Arnold v. United States Rubber Company, note 3 *supra* and Meche v. Farmers Drier & Storage Company, La.App. 3 Cir. 1967, 193 So.2d 807, cert. denied, 250 La. 369, 195 So.2d 644.

9. See discussion in text accompanying note 3.

_effort_

superior to anything in current use in the field; and who has never learned of a design defect despite the exposure of its product to use millions of times has in my opinion maintained the standard of care society expects of him.

For these reasons, judgment will be rendered in favor of the defendant. This opinion will serve in lieu of findings of fact and conclusions of law.

## ON MOTION FOR NEW TRIAL

The motion for a new trial asserts that, under Michigan law, the plaintiffs would have a cause of action against the manufacturer, General Motors (GM), based on implied warranty; implied warranty arises from the contract of sale; the manufacturer sold the car in Michigan; the contracts between the franchise dealers and General Motors provide that Michigan law will apply to their contracts; therefore Michigan law applies.

Even if all of the premises of this attenuated syllogism were correct,[1] the conclusion that is implicit in it, that a different result would ensue were the implied warranty applicable here, is incorrect.

"[S]omething more than injury must be shown in instances such as this plaintiff has pleaded," the Michigan Supreme Court said in Piercefield v. Remington Arms Co., 1965, 375 Mich. 85, 133 N.W. 2d 129, 134, on which plaintiff principally now relies. "[H]e must allege and prove (a) the defect of manufacture upon which he relies, and (b) injury or damage caused by or resulting from such defect." *Id.* And, quoting from another case, "Implied warranty recovery is based upon two factors: (a) The product or article in question has been transferred from the manufacturer's possession while in a 'defective' state, more specifically, the product fails either to be 'reasonably fit for the particular purpose intended' or of 'merchantable quality,' as these two terms, separate but often overlapping, are defined by the law; and (b) as a result of being 'defective,' the product causes personal injury or property damage." 133 N.W.2d at 134.

Thus, even if liability were based on implied warranty, "[A] plaintiff relying upon the [Michigan] rule must prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains. When able to do that, then and only then may he recover against the manufacturer of the defective product." 133 N.W.2d at 135.[2]

---

1. The plaintiff equates strict liability with implied warranty and argues that it flows from contract law; under Michigan contract law, therefore, there would be strict liability here. While strict liability and implied warranty may be indistinguishable, the theme of recent state court decisions adopting the doctrine of strict liability indicates that strict liability is purely a tort doctrine not circumscribed by the rules or semantics of contract law. See, e. g., Clary v. Fifth Avenue Chrysler Center, Inc., Alaska Sup.Ct.1969, 454 P. 2d 244; and Ulmer v. Ford Motor Co., Wash.Sup.Ct.1969, 452 P.2d 729. In *Ulmer* the Washington Supreme Court adopted the rule of Section 402A, Restatement (Second) of Torts, 1965 and quoted the following passage from Professor Prosser's article, the Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791, 802 (1966):

"[The word 'warranty'] had been from the outset only a rather transparent device to accomplish the desired result of strict liability. No one disputed that the 'warranty' was a matter of strict liability. No one denied that where there was no privity, liability to the consumer could not sound in contract and must be a matter of tort. Why not, then, talk of the strict liability in tort * * * and discard the word 'warranty' with all its contract implications? The American Law Institute approved the proposal, and adopted, in the second Restatement of Torts, a new section [Sec. 402A] which states the strict liability without using 'warranty' * * *." 452 P.2d at 733.

2. *Compare,* Ulmer v. Ford Motor Company, note 1 *supra,* concurring opinion at 452 P.2d 736–737 adding the requirement that the plaintiff must prove that the defect is such as to render the product unreasonably dangerous. The main opinion indicates that the manufacturer is liable only for "defects which create

The facts found in the original opinion lead inescapably to the conclusion that there was no "defect" in the design of the lock when it was designed.[3] Hence we need not concern ourselves with the further question, apparently of some substance, whether Michigan law would apply. A federal court sitting in a Louisiana diversity case must apply the Louisiana rule of conflict of laws.[4] Louisiana courts appear to hold that, in determining the state law applicable to a contract, the place where the contract is made is not decisive; the law of the state having the most significant contacts with the contract applies in the absence of an express designation in the contract of what law shall apply.[5]

A designation in the contract between GM and its dealer that Michigan law applies to the agreement might not be controlling with respect to the ultimate vendee who is not a party to that contract; for example, it might not bar an ultimate vendee who bought a car in Louisiana, to be used in Louisiana, and who was injured here from asserting a cause of action recognized in Louisiana but not in Michigan.

Nor is it all certain that Michigan courts would find proximate cause here.[6]

For the reasons stated, the motion for a new trial is denied.

---

an unreasonable risk of harm," 452 P.2d at 735.

3. The plaintiff assigns as error the court's finding that, under Louisiana law, knowledge of defects is not imputed to the manufacturer in tort cases. Strict liability based on "implied warranty" has not been extended beyond the food cases in Louisiana. But even if Louisiana imposed strict products liability, whether in tort or by a warranty of fitness not dependent on contract, and imputed the knowledge of defects, the conclusions reached in the original opinion indicate that there was no design defect the knowledge of which could be imputed to GM.

4. Klaxon Company v. Stentor Electric Mfg. Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

5. For a discussion of the Louisiana authorities, see Lester v. Aetna Life Insurance Company, W.D.La.1968, 295 F. Supp. 1208, at 1210–1211.

6. See Annotation, 91 A.L.R.2d 1326, 1328 § 3(a) (1963) and Annotation, 51 A.L.R. 2d 633, 662 § 17 (1957). In Corinti v. Wittkopp, 1959, 355 Mich. 170, 93 N.W. 2d 906 the Michigan Supreme Court found the owner of a stolen vehicle who had left the keys in the ignition not liable for property damage that occurred several hours after the theft when the thief lost control of the vehicle while being chased by police and crashed into the plaintiff's grape arbor. Cf. Call v. Huffman, La.App. 2 Cir. 1964, 163 So.2d 397, cert. denied, 1964, 246 La. 376, 164 So. 2d 361 and Berluchaux v. Employers Mutual of Wausau, La.App. 4 Cir. 1967, 194 So.2d 463, discussed in the original opinion.