252 So.2d 129 (1971)
C. L. "Bobby" GAUTHIER, Plaintiff-Appellant,
v.
SPERRY RAND, INC., and New Holland Machine Company, Defendants-Appellees.
No. 3469.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1971.
Rehearing Denied September 23, 1971.
Writ Refused October 28, 1971.
*130 Gravel, Roy & Burnes, Chris J. Roy, Alexandria, for plaintiff-appellant.
Stafford, Pitts & Bolen, Grove Stafford, Sr., Alexandria, for defendants-appellees.
Before FRUGÉ, HOOD and DOMENGEAUX, JJ.
HOOD, Judge.
Plaintiff, C. L. "Bobby" Gauthier, Jr., instituted this action for damages for personal injuries sustained by him while he was engaged in cleaning an automatic hay baler. The defendants are the manufacturers of the hay baler, Sperry Rand Corporation and New Holland Machine Company. Judgment was rendered by the trial court in favor of the defendants, and plaintiff has appealed.
The issues are: (1) Were defendants negligent in failing to properly design, manufacture and label the baler? (2) Is plaintiff barred from recovery by his own contributory negligence?
The accident which resulted in plaintiff's injury occurred at Moreauville, Louisiana, on December 10, 1965. Plaintiff at that time was engaged in cleaning his "New Holland Model Super 77 Hay Baler," and while he was so engaged, with one of his hands in the baling chamber, some of the mechanical parts of the machine began to operate, with the result that plaintiff's right hand was amputated just above the wrist.
The evidence shows that defendants began manufacturing this type of hay baling machine during the year 1953, under a patent which had been registered in 1941. The particular machine involved in this suit was manufactured by defendants during the month of January, 1956. It was sold to Lucien Laborde on July 15, 1957, and Laborde sold it to plaintiff in March, 1963. During the period of almost six years while Mr. Laborde owned that machine he used it for baling approximately 35,000 to 40,000 bales of hay each year.
Plaintiff used the baler from the time he purchased it until the date of the accident, a period of almost three yearsincluding three crop seasons. He testified that the machine operated satisfactorily during the entire time he owned it, and that he and his men cleaned the machine at the end of each of the three baling seasons during which he used it.
The hay baler is a large, complicated machine. It is not self propelled, but it has to be pulled from place to place or over agricultural lands by a tractor. The baler itself, however, is equipped by a 24 horse-power gasoline engine, which is mounted on the frame of the machine, and this engine supplies the power which is needed to operate the baler.
There is a clutch on the machine which serves the purpose of engaging or dissengaging *131 the gasoline engine from the other working parts of the baler. The clutch is operated manually by means of a clutch lever. When the clutch lever is moved to one position it causes an idler wheel on the baler to move back, tightening the V-belts which run from the idler to the main fly wheel, and forcing the belts to come into firm contact with a pulley on the motor. The power supplied by the engine then drives the belts and causes the baler to operate. When the clutch lever is moved to the opposite position, it causes the idler to move forward, loosening the V-belts and disengaging them from contact with the motor.
When the clutch is disengaged the gasoline engine can run without operating the baler. When the engine is running and the clutch is engaged, however, the baler will operate. While the baler is being towed in a field of hay, with the gasoline engine running and the clutch engaged, the machinery on the baler picks up the cured hay and lifts it from the ground to the baling chamber where the hay is compressed into bales. The bales are then automatically tied with twine, and they are dropped off the back of the machine as it is being towed.
The baler is also equipped with cutting knives in the baling chamber. These knives are made of steel and are usually kept very sharp. Some of these knives are stationary, but others move forward and backward while the baler is in operation. The purpose of these knives is to cut the loose hay into separate cakes before the bale is compressed and tied.
Plaintiff had completed his hay baling operations from the 1965 season by December 10, of that year, and on that date he undertook to clean the machine so that it could be stored and kept ready for use during the next season. In order to clean the machine it was necessary for him to pull out by hand some of the loose hay which had accumulated in the baler, and then to remove a back compartment door of the baling chamber and insert through it a hose conveying compressed air to blow out the remaining trash and hay. He started the gasoline engine on the baler about the time he began these cleaning operations, and he allowed that engine to idle with the clutch disengaged while he proceeded to clean the machine. Under those circumstances he inserted his right hand into the baling chamber in the immediate vicinity of the knives in that chamber. While cleaning the machine in that manner, with the gasoline engine running and the clutch disengaged, the knives in the baler began to move, with the result that plaintiff's right hand was completely severed just above the wrist.
Plaintiff contends that the accident was caused by the negligence of defendants in: (a) Failing to properly design and manufacture the baler; (b) failing to attach an automatic cut-off switch to the removable cover of the baling chamber; (c) failing to provide the baler with a pin or brake so as to prevent it from operating while the clutch is disengaged; (d) failing to equip the machine with an adequate clutch; (e) failing to warn plaintiff and others of the danger; and (f) manufacturing, designing and permitting the sale of a dangerous instrumentality.
The evidence shows that the back cover, sometimes called the "feeder cover," of the baling chamber was securely fastened to the baler with wing nuts, and there was a warning sign on the cover which read, "Caution: Always keep this cover in place while operating baler." There also was another sign prominently displayed on the machine which was headed "Safety Precautions," and which contained the following warning: "Don't clean, lubricate, or make any adjustments on the baler while it is in motion." Despite these signs, plaintiff nevertheless removed the cover and reached his hand into the machine, in the immediate vicinity of the above described knives, while the gasoline engine was running. The clutch, of course, was not engaged when that was done. No one witnessed the accident other than plaintiff, *132 and he is unable to explain how the clutch became engaged or why the knives on the machine began to move while his hand was near them.
Several experts in this type of machinery testified at the trial. Some of them opined that as the baler was cleaned and obstructions were removed from its working parts, the belts began "creeping." They felt that while the belts were moving in that manner some trash or hay must have been blown between the belts and the fly wheel, tightening the belts and causing them to come in contact with the idling motor. We think this explanation as to why the machine began to operate while plaintiff had his hand in the baling chamber is reasonable.
The experts stated that the baler could have been equipped with a brake which would have made it impossible for the machine to operate while the clutch lever was in neutral. They also testified that some type of micro-switch could have been installed on the machine, so that it would automatically turn off the gasoline engine when the hatch cover or feeder cover is removed. No such brake or switch was installed on this hay baler, and the evidence indicates that no such safety devices are used on any other hay baler which is now on the market.
The trial judge concluded that there was no defect in design or manufacture of the hay baler. He also held that even if the defendants should be found to have been negligent, plaintiff would be barred from recovery by his own contributory negligence in "reaching into the chamber with his arm and hand, knowing those knives were right there, knowing there was considerable vibration and danger while the engine was running, when it would have been so easy to push the switch and turn off the engine, and this, in the face of the warning decals stamped upon the baler and machine."
The manufacturer or seller of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part sustains an injury caused by a defect in the design or manufacture of the article, if the injury might have been reasonably anticipated. Arnold v. United States Rubber Company, 203 So.2d 764 (La.App. 3 Cir. 1967); Meche v. Farmers Drier & Storage Company, 193 So.2d 807 (La.App. 3 Cir. 1967); Weber v. Fidelity and Casualty Company of New York, 236 So.2d 616 (La.App. 1 Cir. 1970); Soileau v. Nickols Drilling Company, 302 F. Supp. 119 (W.D.La.1969); Dean v. General Motors Corporation, 301 F.Supp. 187 (E.D. La.1969).
In the instant suit there was no defect in any of the parts of machinery manufactured or sold by defendants. The hay baler involved here had been manufactured as designed, and it apparently operated as it was intended to operate.
We agree that there were some dangerous features in the machine involved here, and that anyone who used it subjected himself to some risk of injury. But that is true of many other products, including automobiles, bicycles, farm implements, guns, and even some kitchen appliances. The law does not require that the manufacturer make the product "fool proof" or "accident proof." As stated in Dean v. General Motors Corporation, supra:
"The criterion by which liability is tested is `failure to exercise reasonable care in the adoption of a safe plan or design.' The design must measure up to what the community is entitled to expect of those who persuade the public to buy their productssometimes, as in the case of GM, by dint of tremendous advertising campaigns. The standard `reasonable care', is deliberately flexible; it permits the trier of fact to exercise judgment in determining what measure of care is appropriate. But there is no `defect' in the design if reasonable care is taken in adopting it, even though the design is not perfect. For the plan need not be fool-proof, *133 nor sure against all contingencies. Whether there was reasonable care depends upon facts known at the time it was adopted. * * *"
Here, the hay baler had to be equipped with knives to cut the hay, and some means had to be provided for getting to the knives to sharpen them and to clean around them. The manufacturer provided a cover over the chamber which housed the knives, and a decal was placed on that cover warning that it should always be kept in place while operating the baler. With that cover and warning sign, we do not feel that an injury such as the one sustained by plaintiff in this case should have been "reasonably anticipated" by defendants.
Plaintiff argues that the caution signs were inadequate in that they merely warned of danger "while operating the baler" or "while it is in motion." It is argued that the signs were inadequate in that they failed to caution against cleaning the baler or removing the cover while the "engine" or the "motor" was running. We think the warning signs were adequate. In our opinion the running of the motor or gasoline engine constituted the "operating" of the baler, even though the clutch was disengaged. But, regardless of this technicality, we think the warning signs were sufficient to put anyone on notice of the danger, even though he were not as familiar with the machine as was plaintiff in this case.
We find no merit to the argument that the manufacturers were negligent in failing to install a brake or a micro-switch on the machine as a safety measure. The baler was equipped with a switch which could have been used by plaintiff to turn off the gasoline engine before he removed the feeder cover. And, as we have already noted, a sign on the cover cautioned that it should not be removed while operating the baler. If the motor had been turned off before the cover was removed, there would have been no need for a brake or switch, and there would have been no accident such as the one involved here.
We have concluded, as did the trial judge, that there were no defects in design, manufacture or labeling of the hay baler involved in this suit, and that defendants thus are not liable in damages for the injury sustained by plaintiff. Having reached that conclusion, it is unnecessary for us to consider the question of whether plaintiff is barred from recovery by his own contributory negligence.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.