GULOTTA, Judge.
Plaintiffs appeal from the dismissal of their claim against a manufacturer[1] of a gasoline powered lawnmower, the seller[2], and the manufacturer of the lawnmower engine [3], for injuries sustained July 29,1975 when Mrs. Susyn Cain was operating the mower. We affirm.
We are confronted primarily with the burden of proof required by a plaintiff in a products liability case.
At the outset, we find no merit to plaintiffs’ procedural argument that the trial judge erred in refusing plaintiff the right to file a supplemental and amended petition eleven days before trial. In the original petition plaintiffs allege that the plastic blade guard was defective. Plaintiffs sought to additionally allege (in an amended petition) that the lawnmower’s handle was defective. If we were to conclude that the trial judge had abused his discretion in not granting plaintiff leave to file the supplemental and amended petition, the trial judge nevertheless cured the error when he permitted plaintiff to offer evidence (over defendants’ objection) on the possible defect of the lawnmower handle. We conclude, under the circumstances, plaintiffs suffered no prejudice as a result of the trial court’s failure to permit the filing of the amended petition.
While mowing the lawn at her home, Mrs. Cain suffered the amputation of a toe and partial amputation of another toe, when her foot became caught in the lawnmower blade. According to her testimony, the lawnmower was being used in a normal manner, on a dry day and on a level lawn, when the forward motion of the mower slowed (because of thicker grass) and as she pushed, Mrs. Cain’s foot went through the rear mower guard and came into contact with the rotating blade.
In connection with the central issue, i. e., the burden of proof question, the trial judge, at the conclusion of the trial, in oral reasons, stated:
“ . . . I have heard no evidence which establishes a faulty design or manufacture in the product which allegedly caused the accident . *1219 The entire ease is on the basis of faulty design of one alleged part of this machine and its [sic] it is apparent to me that it had nothing to do with the accident.”
In Weber v. Fidelity & Casualty Company of N.Y., 259 La. 599, 250 So.2d 754 (1971) the Louisiana Supreme Court stated that a plaintiff claiming injury in a products liability case has the “burden of proving that the product was defective, i. e., unreasonably dangerous to normal use, and that the plaintiff’s injuries were caused by reason of the defect.” The Weber court went on to say that if the product is proven defective by reason of its hazard to normal use, plaintiff need not prove any particular negligence because the manufacturer is presumed to know of the vices in the things he makes, whether or not he has actual knowledge of those vices.
In the comparatively recent case of Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (1978), the Supreme Court applied the “unreasonably dangerous to normal use” test in a case involving an eye injury sustained from a hammer chip where evidence established that an earlier chipped hammer becomes unreasonably dangerous to normal use. Plaintiff recovered in Chappuis when a chip from a hammer struck plaintiff’s eye while the hammer was being used in a normal manner. Because of the manufacturer’s knowledge that a chipped hammer is likely to chip again in normal use, the Chap-puis court concluded that the manufacturer had the duty to place a warning label on the hammer such as “discard this hammer if it becomes chipped”, or “if this hammer chips, return to seller.”
Because the lawnmower handle is not firmly anchored to the chassis, plaintiffs claim that the upward motion of the handle to a vertical position when forward motion is impeded, allows the operator to move dangerously close to the mower chassis and blade. According to plaintiffs, this defect makes the lawnmower unreasonably dangerous to normal use. We find no merit to this contention. Virtually no evidence was offered to show that the lawnmower handle was defective or how the upward or downward movement of the handle contributed to this unfortunate accident. No expert evidence was submitted by plaintiffs to support this argument. Plaintiffs theorize that the five foot, three and one-half inch operator could have been injured when her foot came into contact with the blade as the handle moved forward to a vertical position. This argument is speculative and unconvincing.
Plaintiffs’ other attack centers around a defective guard which broke on one side when struck by the force of plaintiff’s foot, causing the foot to be lodged in the lawnmower blade. In this connection, plaintiff and her husband testified that prior to the use of the mower on the day of the accident, the rear mower guard[4] was intact. After the accident, plaintiffs noticed that the guard “ . . . was moved to the left hand side and the right side was broken free and it was laying on an angle.” The husband described the guard as “broken off.” The lawnmower had been purchased approximately seventeen months prior to the accident and Mr. & Mrs. Cain had used the mower in excess of thirty times without incident. According to Mrs. Cain’s recollection, after the accident, she noticed the left side of the guard was attached, but not the right side.
Harold Myers, a mechanical engineer who examined the mower after the accident, stated that it met the National American Standards for safety, however, the mower had been poorly maintained. According to this expert, the purpose of the guard is to prevent projectiles from being thrown from beneath the machine and causing injury or damage. His inspection indicated that the guard had been “cut through” and this damage could have occurred only by a “terrible impact”, such as a rotating blade. The guard was described by Myers as a hard and stiff “fibrous like material”. In a demonstration to the court, this expert witness *1220 indicated that it is “impossible” for the operator of this type of mower to get his foot caught underneath the mower without the rear guard coming “completely off”. Myers further indicated that this mower is not any more dangerous than any other.
The evidence considered, we conclude plaintiff failed to carry the burden of proof required to show that the mower was unreasonably dangerous to normal use. See Weber and Chappuis cases, supra. As was stated in Gauthier v. Sperry Rand, Inc., 252 So.2d 129 (La.App. 3rd Cir. 1971), writs denied, 259 La. 940, 253 So.2d 382 (1971), in a products liability case; “the law does not require that the manufacturer make the product ‘fool proof’ or ‘accident proof’.”
The judgment is affirmed.

AFFIRMED.

. Southland Moore Company, Inc.

. Handy City, Inc.

. Briggs and Stratton Engine Company.

. Harold Myers, a consulting engineer, testified that the guard was fifteen and one-quarter inches wide, attached by two metal clips to one-eighth inch slots on the mower. The guard was attached on the left and right rear sides of the mower.