LABORDE, Judge.
This appeal arises from a jury verdict for the defendant in a products liability action. Plaintiff, Steven Broussard, filed suit against defendant, Massey-Ferguson Company, Inc. (Massey-Ferguson), for injuries he sustained when he fell off a combine manufactured by the defendant. Commercial Union Insurance Company, the worker's compensation insurer of Broussard's employer, intervened in the suit, seeking reimbursement of all worker’s compensation benefits and medical payments it has paid to the plaintiff. The jury rendered a verdict for the defendant and against the plaintiff and intervenor. Plaintiff and in-tervenor bring this appeal. We affirm.
FACTS
Steven Broussard was employed as a general farm laborer by J & M Farms, Inc., located in Beauregard Parish, Louisiana. On October 3, 1984, Mr. Broussard was instructed to clean the air conditioner condenser of the Massey-Ferguson Model 760 combine, owned by his employer. To accomplish this, he climbed onto the combine and stood on a walkway situated between the cab and the air conditioning unit. He proceeded to spray the front of the unit with a pressurized water hose. After removing the dust and debris accumulated on the front of the unit, Mr. Broussard climbed rearward in order to clean the back of the unit. He positioned himself on the outboard side of the bin with his left knee on top of the unit and his right foot placed on the curved surface which forms the edge of the bin. Mr. Broussard was not hanging onto anything while he occupied this position, as he used both hands to hold the handle of the hose. During the cleaning operation, his foot slipped on the wet surface of the bin and he fell backwards to the ground. As a result of the fall, plaintiff suffered serious injuries to his back.
DESIGN DEFECT
On appeal, plaintiff and intervenor contend that the jury was manifestly erroneous in its determination that the Massey-Ferguson combine was not defective. They argue that the combine contained a design defect which directly caused the plaintiff's injuries. To recover under a design defect theory, a user of a product must prove that the object was defective (i.e., unreasonably dangerous to normal use) and that his injuries or damages were caused by the defect. Hines v. Remington Arms Co., Inc., 522 So.2d 152 (La.App. 3d Cir.), writ denied, 524 So.2d 522 (La.1988).
To prove their claim that the combine possessed a design defect, the plaintiff and intervenor offered the testimony of their expert witness, Dr. Gerald Whitehouse. *901 Dr. Whitehouse testified that there existed no safe or adequate place on the combine to clean or service the air conditioner condenser. He was also of the opinion that there was no safer position from which the plaintiff could have cleaned the unit, than that which he assumed at the time of the accident. Dr. Whitehouse stressed that the combine should have been equipped with a secure area from which this operation could have safely and adequately been performed. In his view, the combine should have been provided with one or more of the following: (1) a non-skid surface applied to the curved area where the plaintiff placed his foot; (2) a steel foot rest on the curved area; and/or (3) a guardrail in the vicinity of the air conditioner condenser. He also informed the jury that the technology for all of these improvements existed at the time the combine was manufactured. Finally, Dr. Whitehouse pointed out that a guardrail, similar to the one he suggested, had been incorporated into the design of the successor model (Massey-Ferguson Model 860) to the combine involved in this litigation. The 860 went into production approximately three and one-half years pri- or to the plaintiffs accident.
To challenge the evidence put on by the plaintiff and intervenor, the defense offered its own expert, Earl Morton. Mr. Morton has been employed by Massey-Ferguson for the past twenty-two years and was part of the design team which designed both the 760 and the 860. He testified that there were several safer positions from which the plaintiff could have successfully completed this operation. Mr. Morton indicated that one of the safest places to perform this task would be from the flat walkway area located between the cab and the air conditioner condenser. He also suggested that the task could have been accomplished from a step located on the side of the bin or from an extension ladder propped up against the bin.[1] Mr. Morton opined that the safeguards suggested by Dr. Whitehouse were either impractical, unnecessary, or would have made the combine more hazardous. As for the guardrail- on the 860, Mr. Morton testified that this was placed there to give greater access to the air filter area and has nothing to do with, nor can it properly be used for cleaning the air conditioner condenser.
We begin by noting that since the plaintiff and intervenor question a factual finding of the jury, our review is limited to a determination of whether that finding was clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Mercer v. Fruehauf Corp., 492 So.2d 538 (La.App. 3d Cir.), writ, denied, 496 So.2d 350 (La.1986). After a careful review of the evidence on both sides, we can not say that the jury committed manifest error in its determination that the combine was not defective. The evidence clearly establishes that there were several less dangerous positions from which the plaintiff could have carried out this operation; he simply failed to exercise good judgment in choosing a position to complete the task. We are aware of the plaintiff and inter-venor’s argument that due to space restrictions it was impossible for the plaintiff to utilize these other positions. This argument is unpersuasive, as the evidence indicates that the plaintiff would have faced the same space restrictions from any position he approached the task from.
We hold that it was not incumbent upon the manufacturer of this combine to place safeguards wherever a person servicing or cleaning this apparatus might randomly decide to perform this operation. Nor is a manufacturer obligated to design a machine that is foolproof or accident proof, but merely one which is not unreasonably dangerous to normal use. Hines, supra; Gauthier v. Sperry Rand, Inc., 252 So.2d 129 (La.App. 3d Cir.), writ, denied, 253 So.2d 382 (La.1971). The absence of safeguards at this particular location did not make the combine unreasonably dan *902 gerous to normal use.[2]
DUTY TO WARN
The plaintiff and intervenor also raise the issue of the defendant’s failure to provide any warning or instructions concerning the cleaning of the air conditioner condenser unit. They claim that the defendant had a duty to warn the plaintiff of the dangers inherent in cleaning the unit from that particular position, or, at the least, should have provided some instructions on how to safely perform the operation. The defendant concedes that it did not provide instructions on how to clean the unit, but it maintains that this is a common sense operation and that it does not routinely provide instructions regarding common sense operations.
A manufacturer has a duty to give adequate warnings of unreasonable danger involved in the normal use of its products where it knows or should have known of that danger. Holmes v. State Through Department of Highways, 466 So.2d 811 (La.App. 3d Cir.), writ, denied, 472 So.2d 31 (La.1985); Brumley v. Firestone Tire & Rubber Co., 459 So.2d 572 (La.App. 3d Cir. 1984), writ, denied, 462 So.2d 1267 (La. 1985). Having determined that the combine was not unreasonably dangerous, we find that there was no duty on the part of the defendant to warn the plaintiff not to position himself as he did, or to provide instructions on how to clean the air conditioner condenser.
For the foregoing reasons, the decision of the trial court is affirmed. Costs of this appeal are assessed equally to the plaintiff and intervenor.
AFFIRMED.

. In addition to the positions suggested by Mr. Morton, both Dr. Whitehouse and the plaintiffs employer, P J. Habetz, admitted on cross-examination that the plaintiff could have cleaned the unit from a seated position on top of the condenser box itself.

. Both plaintiff and intervenor cite to American Society of Agricultural Engineers Standard 318.-6, § 5.4 to bolster their argument that the combine should have been equipped with safeguards at the position the plaintiff occupied at the time of the accident. Section 5.4 provides:
"Handholds, hand rails, guard rails or barrier type safeguards shall be provided, if necessary, to minimize falling during normal operation or servicing, unless means are provided by other parts of the equipment." [Emphasis added]
We find that the combine did provide other means and therefore section 5.4 is not applicable.