234 So.2d 500 (1970)
Lewis J. TOWNER, Plaintiff-Appellee,
v.
Hanson MILLIGAN et al., Defendants-Appellants.
No. 3024.
Court of Appeal of Louisiana, Third Circuit.
April 23, 1970.
Rehearing Denied May 13, 1970.
*501 Davidson, Meaux, Onebane & Donohoe, by J. J. Davidson, III, Lafayette, for defendants-appellants.
Sidney P. Landry and John G. Poteet, Jr., Lafayette, for plaintiff-appellee.
Before TATE, SAVOY and HOOD, JJ.
HOOD, Judge.
Lewis J. Towner instituted this suit for damages for personal injuries sustained by him when an automobile which he was driving was struck in the rear by a pick-up truck. The truck was owned by Mark's Plumbing Company and was being driven by its employee, Hanson Milligan. The defendants are Milligan, Mark's Plumbing Company and the latter's insurer, Fidelity and Casualty Insurance Company of New York. Judgment was rendered by the trial court in favor of plaintiff, awarding him damages in the sum of $2,769.10. Separate appeals were taken by plaintiff and by defendants.
We dismissed the appeal taken by plaintiff because of his failure to file an appeal bond timely. 236 So.2d 95. The only appeal which is before us now, therefore, is the one which was granted to defendants.
The sole issue presented relates to liability. Defendants deny any negligence on the part of either the owner or the driver of the pick-up truck, contending that the accident was unavoidable, the sole cause of the collision being the sudden and unexpected failure of the brakes of the pick-up truck to function.
The accident occurred about 10:00 A.M. on May 23, 1966, at an intersection of two streets in the City of Opelousas. Plaintiff Towner stopped his automobile for a red traffic signal at that crossing, and shortly thereafter the rear of his car was struck by a pick-up truck owned by Mark's Plumbing Company and being driven by its employee, Milligan. The streets are hard surfaced at that intersection, and the weather was clear and dry.
Milligan was driving his employer's 1959 model Ford pick-up truck at a speed of from 10 to 15 miles per hour as he approached the intersection behind plaintiff's car. He started to apply his brakes when he reached a point about 25 or 30 feet behind the stopped automobile, but the brake pedal went completely to the floor and the brakes did not function at all. Milligan pumped his brakes one or two times, he attempted to shift the truck into reverse gear, and he tried to turn to his right, but in spite of these efforts to avoid a collision his truck ran into the rear of the Towner automobile. The truck was equipped with an emergency brake which was in good operating condition, but Milligan acknowledges that he did not attempt to use it.
The evidence shows that Milligan had been working for Mark's Plumbing Company for about six months. He had been using that truck daily during that entire period of time, and he had never had any trouble with the brakes. He applied the brakes of the truck several times, having stopped for at least four intersectional traffic lights, just before he reached the intersection where this accident occurred. He stated that the brakes worked perfectly each time he stopped before the accident occurred, that he had no indication whatsoever of any defect in the braking system of the truck, and that he had no reason to believe that the brakes would cease to function. His testimony as to those facts is uncontradicted.
The mechanic who repaired the Milligan truck after the accident was the only expert mechanic who testified at the trial. Shortly after the collision occurred he found that a flexible brake fluid line running from the frame to one of the right wheels had broken, and that all of the braking fluid had escaped through that opening in the line. After being qualified as an expert, he testified that the brake failure was caused by the rupture or break in the fluid line, and that when such a break occurs the brakes of a vehicle cease *502 to function suddenly and completely. He felt that the brake fluid line broke because of a weakness or defect in that line, and that the fluid line gave way at that point when pressure was applied by the brake pedal immediately before the accident occurred. He stated that it is very difficult to find a weakness in a flexible fluid line, and that if he had inspected this line before the accident he could not have determined whether there was such a defect in it.
The truck which Milligan was driving was about seven years old. During or about the month of February, 1966, or about three months before the accident occurred, he had had the brakes checked for the purpose of obtaining a "State inspection slip." He testified that just before this collision occurred the brakes were in excellent working condition, and that he got good braking action when he depressed the brake pedal as little as "an inch and a-half at most."
The applicable rule of law is that a driver generally is not held to be responsible for latent defects in his car where he exercises reasonable care in having the car inspected and he has had no reasonable prior notice of a defective condition. In order for latent defects to constitute a valid defense, however, the proof must be strong enough to exclude any other reasonable hypothesis as to the cause of the accident except that it resulted from the alleged defects. The evidence must establish that the driver was not aware of the defects, and that the defects could not reasonably have been discovered by a proper inspection. Robinson v. American Home Assurance Company, 183 So.2d 77 (La.App. 3 Cir. 1966); Delahoussaye v. State Farm Mutual Automobile Insurance Co., 202 So.2d 287 (La.App. 4 Cir. 1967); Cartwright v. Fireman's Insurance Company of Newark, New Jersey, 213 So.2d 154 (La.App. 3 Cir. 1968; Affirmed at 254 La. 330, 223 So.2d 822).
We think the evidence in the instant suit establishes that the accident was caused by the failure of the brakes on the Milligan truck to function, that the brakes were operating properly prior to the time of the accident, that the owner and driver of the truck did not know that the brakes were defective, and that they had no reason to suspect that they might fail. The brakes on the truck had been inspected about three months before the accident occurred. The brakes failed suddenly and completely, without any prior warning, at the time of the accident. The defect in the braking system consisted of a weakness in the flexible fluid line which caused the line to rupture suddenly when the brakes were applied. We are convinced that this defect or weakness in the line could not have been discovered by a reasonable inspection of the brakes prior to the accident.
Under these facts we conclude that the owner and driver of the truck exercised reasonable care in having that vehicle inspected prior to the accident, and that they were not negligent in operating the truck with its defective brake system.
Plaintiff argues, and the trial judge held, however, that defendant Milligan was negligent in having failed to apply his brakes sooner. The judge reasoned that although Milligan was traveling "very slowly," at a distance of 25 to 30 feet was "too close for a prudent driver to begin applying brakes to come to a safe stop behind another vehicle."
As we have already noted, Milligan was driving at a speed of from 10 to 15 miles per hour as he approached the intersection. He applied his brakes when he was 25 or 30 feet behind the Towner car, stating that he intended to bring his truck to a stop "just gradually." Pursuant to a stipulation of all parties to the suit, a stopping distance chart was introduced in evidence, and the parties agreed that "the material and notations found therein are true and correct." This chart shows that the actual stopping distance for a vehicle traveling 10 miles per hour is four and one-half *503 feet, and that the stopping distance of a car traveling 20 miles per hour is 18 feet. According to that chart, therefore, and considering the very slow rate of speed at which the truck was traveling, Milligan would have had ample time within which to bring his vehicle to a stop before he reached the Towner car, if the brakes of the truck had functioned properly. Under those circumstances we think the trial court erred in holding that Milligan was negligent in failing to apply his brakes sooner.
Plaintiff also contends that Milligan was negligent in having failed to use the emergency brake in the truck after he discovered that his foot brakes had ceased to function.
Every motor vehicle is required to be equipped with two separate means of applying the brakes (LSA-R.S. 32:341). Our law is settled that the failure of a motorist to use the emergency brake on the vehicle he is driving constitutes negligence and a cause of the accident, if there is a reasonable opportunity for him to do so effectively after the ordinary foot brakes fail. Robinson v. American Home Assurance Company, supra; Littleton v. Arrow Food Distributor, Inc., 224 So.2d 131 (La.App. 3 Cir. 1969).
As correctly pointed out by plaintiff, we held in Robinson v. American Home Assurance Company, supra, that the driver of the following vehicle was negligent in having failed to use her emergency brake after she realized that her foot brakes had failed and before she collided with the vehicle in front of her. There, however, the driver was 60 or 65 feet behind the forward vehicle when she applied her brakes, and we found that she had ample time within which to use her emergency brake. The evidence, in fact, showed that she had time to cause her car to slow down to the point that she "almost stopped," without the use of any brakes at all, after she discovered that her brakes were out and before she struck the car which was ahead of her. The Robinson case thus is not applicable here because of this difference in facts.
We think the facts in the instant suit are more like those which were presented in Delahoussaye v. State Farm Mutual Automobile Insurance Co., supra, and in Cartwright v. Fireman's Insurance Company of Newark, New Jersey, supra. In each of those cases it was determined that the driver of the following vehicle was not negligent, although he failed to use his emergency brakes after he discovered that his foot brakes had failed.
In this suit less than two seconds elapsed between the time Milligan applied his brakes and the time the collision occurred. During that brief period of time he pumped his brake pedal once or twice, he attempted to put his truck in reverse gear and he turned to his right, all in unsuccessful efforts to avoid an accident. When asked why he didn't use the emergency brake, Milligan testified, "I didn't have time enough to think of using the hand brake at that time," and "When something like that happens it's mighty fast."
Under the facts presented here, we are unable to agree with plaintiff that Milligan was negligent in failing to use his emergency brake, in addition to all of the other efforts he made to avoid the accident.
Our conclusion is that the driver and owner of the pick-up truck were free from negligence, and that the judgment appealed from must be reversed. We are aware of the harshness of the rule of law which prevents the plaintiff in a case such as this from recovering, although he is free from fault. As pointed out by our Supreme Court in the Cartwright case (223 So.2d 822), however, this is a matter of policy which addresses itself to the Legislature.
For the reasons herein set out, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendants and against plaintiff, rejecting plaintiff's demands at his costs. The costs *504 of this appeal are assessed to plaintiff-appellee.
Reversed.
TATE, Judge (dissenting).
In our majority opinion, we reverse the trial court and sustain a "latent brake defect" defense. In doing so, we cite the rule that "the proof must be strong enough to exclude any other reasonable hypothesis as to the cause of the accident except that it resulted from the alleged defects".
Nevertheless, in reversing the trial court which applied it, we ignore this well-settled principle while paying lip-service to it.
The jurisprudential rule developed in an unbroken line of decisions has placed a heavy burden of proof upon those who injure innocent parties through a vehicle defect and then claim its discovery or the accident unavoidable. It is to be noted that the defense was held unavailable in all of the decisions reported, except in the recent Delahoussaye (1967) and Cartwright (1968) decisions cited.
The jurisprudential rule thus developed did not provide for liability without fault. Rather, recognizing the difficulty the injured party has to discover pre-accident knowledge solely in the possession of the tortfeasor, it places a heavy burden upon the latter to show that the accident admittedly caused by fault of his vehicle was truly unavoidable.
In the present instance, the defendant Milligan's seven-year-old Ford pick-up truck crashed into the rear of the plaintiff's vehicle which had stopped for a traffic light. Milligan was approaching when the light turned red, Tr. 154 (his testimony), and he jammed on his brakes just 25-30 feet behind the plaintiff's vehicle.[1]
Milligan says that his brakes then failed, and that this was the first notice he ever had that the brakes in his old truck were defective. A mechanic who examined the vehicle after the accident found that the fabric-and-rubber brake line had ruptured and that "it could have been rotten", Tr. 205. The ruptured brake line was thrown away and not available for evidence.
As one of the early lead-cases holds, failure to have adequate inspection of brakes may in itself be a negligent factor importing liability when the brakes subsequently fail. Hassell v. Colletti, 12 So.2d 31 (La. App.Orl., 1943; McCaleb, J.).
In the present instance, the only alleged inspection made of the brakes before the accident was for the $1.00 state safety certificate (in which headlights, brakes, etc., are cursorily tried). Even as to that, Milligan did not know when it had been made, Tr. 155, nor had he been present to know if the perfunctory check had actually been done, Tr. 171. The mechanic who allegedly "inspected" the brakes was not produced to show what actual careful inspection of the rotted brake line might have shown. In previous decisions, such pre-accident evidence has been regarded as essential.
Perhaps more important an error in the majority's approach, however, is its failure to discuss the evidence which led our learned trial brother to conclude that the defendants had not produced proof strong enough to exclude any other reasonable hypothesis than that the accident resulted from the alleged latent defect. See Littleton v. Arrow Food Distributor, Inc., 224 So.2d 131 (La.App. 3d Cir., 1969).
Simply stated, the trial court found that Milligan's negligent failure to apply his brakes until 25-30 feet from impact was a proximate cause of the accident. Had he applied his foot-brakes reasonably, then *505 upon discovery of their non-workinghe would have had a reasonable opportunity to stop by use of his emergency hand-brake. Failure to avoid an accident by use of the emergency brake, when the foot-brakes fail, is itself negligent. Robinson v. American Home Assurance Co., 183 So.2d 77 (La. App. 3d Cir., 1966).
Although Milligan estimates his speed at 10-15 mph, he also admits he was approaching in "high" gear. Tr. 159. When the red light came on, he pumped his brake. When it didn't hold, he testifies, "I pumped it a few times and also tried to put it in reverse to avoid hitting him." Tr. 167.[2]
He admitted, however, that he did not attempt to use his emergency brake and "don't even know" how it works! Tr. 169.
The majority ignores this substantial evidence indicating faultfor, remember, the defense requires exclusion of every other hypothesis and essentially requires extra-ordinary care to prevent injury from vehicle fault, Breaux v. Valin, 138 So.2d 405 (La.App. 3d Cir., 1962), in reliance upon a stopping distance chart showing that a car with the braking efficiency of the chart could stop in 25-30 feet if the brakes had functioned properly.
This chart is taken from Blashfield's Cyclopedia of Automobile Law, Section 6237. The trial court admitted it per stipulation as a rough guide under the conditions shown by it, specifically pointing out that individual stopping distances vary with many factors of road and vehicle condition. Tr. 62. The chart itself shows on its face that it represents the "actual stopping distance of car with brakes in excellent condition".[3]
The trial court properly regarded it as nonsensical to suggest that the stopping distances shown for a car with excellent brakes applied to this old truck. For instance, LSA-R.S. 32:342, providing for minimum efficiency of brakes, indicates that trucks have significantly less braking efficiency than passenger cars. See also, e. g., Am.Jur.2d Desk Book, Document No. 176. Thus, a pickup truck such as is here involved must only have brakes which stop a vehicle within 30 feet of brake-application at 20 mph (instead of 18 feet, as in the Blashfield chart). LSA-R.S. 32:342.[4]
Considering the varying estimates of Milligan's testimony, I cannot say our trial brother erred in finding Milligan negligent in failing to brake sooner, especially in view of the heavy burden required of him to sustain the latent-defect defense.
I thus suggest that the majority errs in seizing every nuance of the testimony favoring the brakeless defendant, but in ignoring the substantial evidence accepted by the trial court which shows tardy application of brakes in a too-hasty approach to the light turned red.
I not only suggest that the trial court did not commit manifest error of fact in its considered determination by excellent written opinionbut that the majority commits gross error of law in not applying, when sustaining this latent-defect defense, the heavy burden of proof until now held necessary in an unbroken line of decisions for thirty years.
The writer respectfully dissents for the reasons above perhaps too fully stated.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents.
NOTES
[1] The trial court accepted his several statements that he braked when 25-30 feet behind, as first completed in ink in a typed statement taken by an adjuster. Tr. 196. However, Milligan also estimated this stopping distance in his testimony at only "twenty to thirty feet". Tr. 163, 6th line from the bottom.
[2] He also admitted that there was no traffic in the left lanes of this one-way four-lane street, into which he could have turned rather than proceeding straight into the plaintiff's vehicle.
[3] The chart stated that this was equivalent to deceleration of 23.3 feet per second, or to stopping in 18 feet from 20 mph.
[4] The statute says this amounts to a deceleration of 14 feet per second.