256 So.2d 298 (1971)
Sam WISHOM et al.
v.
FORD MOTOR COMPANY et al.
No. 8634.
Court of Appeal of Louisiana, First Circuit.
December 20, 1971.
*299 Lannis A. Kircus, Baton Rouge, for Sam Wishom.
Wallace A. Hunter of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for Ford Motor Co.
Joel B. Dickinson, Baton Rouge, for Bobby Ware.
William A. Norfolk of Taylor, Porter, Brooks & Phillips, Baton Rouge, for Nelson & East Motor Co., for appellee.
Robert L. Kleinpeter, Baton Rouge, for Mount Beacon Insurance Co.
Before LANDRY, BLANCHE and TUCKER, JJ.
BLANCHE, Judge.
The plaintiffs are Sam Wishom and his wife, Evline Wishom, and Henry Wright, individually and as administrator of the estate of his minor son, Henry Wright, Jr. The defendants are Bobby S. Ware, driver of the 1967 Ford pick-up truck; Ford Motor Company, manufacturer of the truck; and Nelson and East Ford Company, Inc., the dealer who sold the truck to Ware and made repairs to the vehicle following a prior accident which occurred just shortly before the accident with Sam Wishom. Nelson and East was also made a third party defendant by the defendant Ware. Both plaintiffs and third party plaintiff Ware dismissed their suits against Nelson and East. Mt. Beacon Insurance Company, the insurer of plaintiff Sam Wishom, paid plaintiffs the sum of $4,500 under the uninsured motorist provisions of the policy, and as a consequence thereof intervened in the suit seeking recovery of any sums plaintiffs might recover from defendants up to the amount paid by it under said policy.
After trial the trial judge entered Written Reasons for Judgment dismissing plaintiffs' suit as to Bobby S. Ware and Ford Motor Company, as well as the intervention of Mt. Beacon. He also entered judgment in favor of defendant Nelson and East Ford Company, Inc., who had previously been dismissed from the suit. It may be that Nelson and East was still in the suit as a result of Mt. Beacon's intervention. However, Nelson and East filed a peremptory exception to Mt. Beacon's intervention, contending that under Mt. Beacon's uninsured motorist coverage Mt. Beacon *300 was obligated to pay its insured only such sums as its insured or its legal representative would be legally entitled to recover as damages from the owner and operator of an uninsured automobile and that inasmuch as Nelson and East was neither owner nor operator of the uninsured automobile the intervenor had no right or cause of action as to it under the policy. The trial judge referred this exception to the merits. After completion of the trial, he ultimately dismissed the plaintiffs' claims as to defendants Ware and Ford, as well as the intervention of Mt. Beacon, thus at this point making a ruling on Nelson and East's exception unnecessary. From the foregoing judgment plaintiff has perfected this devolutive appeal. We affirm.
Plaintiffs' only argument on appeal is that the trial judge erred in failing to find that the accident was caused by the failure of the steering sector shaft in the Ford pick-up truck driven by Ware. Plaintiffs did not favor us with any argument as to the liability of the defendant Ware whose vehicle was on the wrong side of the road when the accident occurred. Further, counsel for the defendant Ware filed no brief but wrote the Court a letter, stating that since plaintiffs' only argument was against Ford, he did not feel it necessary to file a brief. He also requested that we let him know if anything developed on the hearing that would necessitate a brief and allow him a reasonable length of time to file a brief in response thereto. Our recollection is that nothing developed on the hearing, and therefore we have not failed counsel.
The facts surrounding the accident are briefly stated as follows: On or about October 1, 1967, at or about dusk plaintiff, Sam Wishom, accompanied by his wife and Henry Wright, Jr., was driving in an easterly direction on Louisiana Highway 10 when the pick-up truck driven by Ware veered from its westbound lane striking plaintiffs' automobile and causing injuries to all of its occupants.
The testimony of the witnesses as well as the physical evidence leaves no doubt that the defendant Ware's pick-up truck was in plaintiff Wishom's lane of traffic at the time of the accident and that no fault could be assessable to Wishom. Inasmuch as Ware was in the wrong lane of traffic at the time of the accident, he is presumed to have been negligent and bears the burden of establishing that he was without fault or that there were circumstances which justified his conduct. Moreau v. Transport Insurance Company, 203 So.2d 727 (La.App. 3rd Cir. 1967), writ refused, 251 La. 686, 205 So.2d 605, and numerous cases therein cited.
The defendant Ware had been with his three children to a friend's camp near Bluff Creek on the afternoon of the accident and was returning to his home at Jackson, Louisiana, when the accident occurred. He testified that he was proceeding in a westerly direction on Highway 10 at a speed of between 50 to 55 miles per hour and that when he first noticed anything amiss, he was of the impression that he had had a blowout or that a wheel had come off and that "the left front [of the truck] fell down with a pop and pull at the steering wheel." (Record, p. 81) He maintained that he had the truck under control at the time that the left front fell down but that when he attempted to steer, the steering wheel turned freely and he was unable to control his vehicle.
The State Trooper who investigated the accident testified that he found 120 feet of skid marks before the impact left by the Ford pick-up truck and that these skid marks commenced in the westbound lane and crossed into the eastbound lane in an arching movement. He also observed that there were scratches and gouge marks on the pavement indicating contact between the rim of the car and the surface of the highway before the collision. He found that the left tire of the pick-up had come off and located it some distance back up the road.
*301 The physical evidence and the testimony of the State Trooper convinces us, as it did the trial judge, that a mechanical failure occurred affecting Ware's ability to maneuver his truck and that it occurred before the collision and while he was driving in his proper lane of traffic.
There is no evidence in the record that Ware was aware of any defects in his vehicle or should or could have discovered them by proper inspection. His truck was practically new, and some 300 miles prior to the accident it had undergone extensive repairs by Nelson and East. The following discussion from Towner v. Milligan, 234 So.2d 500 (La.App. 3rd Cir. 1970), is relevant to this case:
"The applicable rule of law is that a driver generally is not held to be responsible for latent defects in his car where he exercises reasonable care in having the car inspected and he has had no reasonable prior notice of a defective condition. In order for latent defects to constitute a valid defense, however, the proof must be strong enough to exclude any other reasonable hypothesis as to the cause of the accident except that it resulted from the alleged defects. The evidence must establish that the driver was not aware of the defects, and that the defects could not reasonably have been discovered by a proper inspection. Robinson v. American Home Assurance Company, 183 So.2d 77 (La.App. 3 Cir. 1966); Delahoussaye v. State Farm Mutual Automobile Insurance Co., 202 So.2d 287 (La.App. 4 Cir. 1967); Cartwright v. Fireman's Insurance Company of Newark, New Jersey, 213 So.2d 154 (La.App. 3 Cir. 1968; Affirmed at 254 La. 330, 223 So.2d 822)." (Towner v. Milligan, 234 So.2d 500, 502)
We are of the opinion that the evidence in the record sufficiently meets the requirements of the foregoing rule and that defendant Ware carried the burden of proving that he was without fault.
Plaintiffs' case against Ford fell because they failed to prove by a preponderance of evidence that the truck owned and driven by Ware possessed a defective steering sector shaft which broke and caused the accident. Ford would be liable to plaintiffs if plaintiffs could prove such defect. In this regard Meche v. Farmers Drier & Storage Company, 193 So.2d 807 (La.App. 3rd Cir. 1967), writ refused, 250 La. 369, 195 So.2d 644, is in point:
"A manufacturer or seller of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part sustains an injury caused by a defect in the design or manufacture of the article, if the injury might have been reasonably anticipated. [Citations omitted]" (Meche v. Farmers Drier & Storage Company, 193 So.2d 807, 811)
The evidence submitted by plaintiffs to prove the fact of the defect is more favorable to defendants than it is to plaintiffs. Plaintiffs called Alvin Doyle, an expert in automobile mechanics, who frankly testified that he was not an expert in the field of metallurgy and could not tell whether the steering shaft failed as a result of metal fatigue or as a result of an impact from either the prior accident or the present accident.
There is no conflict between the metallurgical experts who testified on this point, and the preponderance of the evidence is that the steering sector shaft did not fail because of metal fatigue but failed as a result of the impact with the plaintiffs' car. The defendant Ford offered the testimony of Calvin Cummings as an expert metallurgist and automobile engineer in the field of testing and quality control. After performing a metallurgical test known as a Rockwell hardness test, he found that there was no indication of any defect or fatigue in the metal, nor any indication that the steering sector shaft was in any way improperly manufactured. It was his opinion *302 that the shaft failed as a result of a severe or abnormal lateral impact which was consistent with the damage to the pick-up truck.
The record also reveals that prior to trial counsel for the plaintiffs well knew that expert testing would show that there was no defect in the steering shaft, for plaintiffs had employed Dr. Oscar W. Albritton, a well known metallurgist, who gave plaintiffs an unfavorable report. Counsel for the defendant Ford learned of this development for the first time at trial when his own expert advised him that someone else had previously applied a Rockwell hardness test to the steering shaft, then determined from opposing counsel that Dr. Albritton had performed the test and sought to call Dr. Albritton as his own witness. The trial judge refused to permit counsel to call Dr. Albritton on the ground that it violated the rule of court which requires that counsel list all witnesses he intends to call in the pretrial order.
A rule of court requiring a pre-trial conference and the preparation of a pre-trial order is for the purpose of regulating procedure and practice. The most obvious end result to be obtained by the practice of requiring counsel to list the witnesses they intend to call is to prevent surprise. Such rules are to be construed reasonably and with consideration of their purpose. We recognize the trial courts are the best exponents of their own rules and should be given wide discretion in their interpretation, but here we find the trial judge abused his discretion. His ruling has done violence to the purpose for which pre-trial procedure was developed.
In our view Dr. Albritton was a newly discovered witness and not known to defendant Ford at the time of trial and under the circumstances not one that should have been reasonably contemplated by the defendant and for that reason not one discoverable with due diligence. Whether the court should permit the testimony of a newly discovered witness depends on the peculiar facts and circumstances of each case. Circumstances should be in favor of permitting such testimony where the newly discovered witness is one not easily discoverable with due diligence. See Case v. Abrams, 352 F.2d 193 (10th Cir. 1965), where the Federal District Court Judge excluded the testimony of a witness when the party who sought to call him knew of the witness and the nature of his testimony prior to pre-trial; or where the testimony of such witness comes as no surprise to opposing counsel; or to prevent manifest injustice.
Article 1551 of the Code of Civil Procedure providing for pre-trial procedure permits the modification of such orders at the trial to prevent manifest injustice.
Dr. Albritton's testimony was taken in an offer of proof and is pertinent to the issue most critical to plaintiffs' case. After testifying that he made a Rockwell hardness test which revealed that there was no evidence of a defect or that the metal had failed as a result of fatigue and after discounting that the break could have been caused by a blowout and the subsequent impact of the rim with the concrete, Dr. Albritton stated that it was his belief that the shaft failed as a result of tortion overloading caused by the impact of the collision and was a result and not the cause of the accident. He further wrote in his report to counsel for plaintiff that to support such a contention he would find a Xerox copy of a laboratory-controlled tortional overload failure which was almost identical to the fractured steering shaft in question.
For the above and foregoing reasons, the judgment of the trial court is correct and is affirmed.
Affirmed.